### DORTO v. CLARK, U. S. Immigration Inspector.

(District Court, D. Rhode Island. July 29, 1924.)

No. 1600.

1. Aliens ⬤⟜1—"Alien," as used in Immigration Act of 1917, does not include moral wife of American citizen.

The word "alien," as used in Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), with the exception of women of the immoral classes, does not include the wife of an American citizen, however she may have entered the country, and though previously an alien by her marriage she became a citizen, unless debarred from citizenship by race.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Alien—Alienage.]

2. Aliens ⬤⟜46—Wife of American citizen, though alien, not subject to deportation.

Act Sept. 22, 1922, § 2 (Comp. St. Ann. Supp. 1923, § 4358b), providing that a woman who thereafter marries an American citizen shall not become a citizen by reason of such marriage, but giving her the right to be naturalized on her own petition, if eligible to citizenship, does not authorize the deportation, under Immigration Act Feb 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), of the lawful wife of an American citizen, who became such after its passage, though she is still an alien.

Habeas Corpus. Petition of Amelia Carlevale Dorto against William M. Clark, Immigration Inspector, for writ of habeas corpus. Writ granted.

O'Shaunessy & Cannon, of Providence, R. I., for petitioner.

Harold A. Andrews, Sp. Asst. U. S. Atty., of Providence, R. I., for Immigration Inspector.

BROWN, District Judge. Upon the petition for the writ of habeas corpus, alleging that the petitioner is unlawfully deprived of her liberty by William M. Clark, inspector in charge of the Immigration Service of the district of Providence, R. I., for the purpose of deportation, and that her imprisonment and detention is without any legal authority, because the petitioner is not an alien, but is a citizen of the United States by reason of being the wife of a duly naturalized citizen

⬤⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the United States, and therefore not subject to deportation, the writ of habeas corpus was issued and the petitioner was produced by the respondent, who made return and answer, denying that the petitioner is a citizen of the United States by virtue of her being the wife of an American citizen, because she became the wife of an American citizen on September 23, 1922, one day after the enactment of the so-called Cable Act of September 22, 1922, 42 Statutes at Large, 1021, 1022 (Comp. St. 1923, § 4358b), and setting forth the following warrant, dated March 18, 1924:

"United States of America, Department of Labor,
"55237/964                              Washington.
"To Commissioner of Immigration, Ellis Island, N. Y. H., or to any Officer or Employee in the U. S. Immigration Service:

"Whereas, from proofs submitted to me after due hearing before Immigrant Inspector M. A. Pitt, held at Ellis Island, N. Y. H., I have become satisfied that the alien Emilie Carlevale, or Emilie Dorto, who landed at the port of New York, N. Y., ex S. S. America on the 14th day of June, 1922, has been found in the United States in violation of the Immigration Act of February 5, 1917 as amended, to wit, 'That she was a person likely to become a public charge at the time of her entry, and that the quota for the year ending June 30, 1922, allotted under the Act of May 19, 1921, as amended by Public Resolution 85, approved May 11, 1922, to the country of which she is a native, was exhausted at the time of her entry,' and may be deported in accordance therewith:

"I, Robe Carl White, Second Assistant Secretary of Labor, by virtue of the power and authority vested in me by the laws of the United States, do hereby command you to return the said alien to Italy, the country whence she came, at the expense of responsible steamship company. The expenses incident to placing the alien on board vessel for deportation, including the services of an attendant, if necessary, at the usual rate, are authorized payable from the appropriation 'Expenses of Regulating Immigration, 1924.' The alien may be permitted to reapply for admission when a quota is available. Delivery of the alien and acceptance for deportation will serve to cancel the outstanding release bond.

"For so doing, this shall be your sufficient warrant.
"Witness my hand and seal this 18th day of March, 1924.
                    "[Signed]   Robe Carl White,
                        "Second Assistant Secretary of Labor."

From oral testimony and from United States Exhibit A, docket entries of the United States District Court for the Southern District of New York, it appears that after the hearing in June, 1922, referred to in the present warrant, the petitioner on June 22, 1922, began habeas corpus proceedings; that on July 20th an order dismissing the writ was entered, and an appeal allowed to the Circuit Court of Appeals; and that on April 25, 1923, there was filed a mandate of the Circuit Court of Appeals dismissing the appeal.

The petitioner, being released on giving bond, came to Providence, R. I., in June or July, 1922, where her relatives were residing, and where about August 1, 1922, she first met Dorto, now her husband. She testified that after two or three days they agreed to marry, and that she then went to Dorto's tenement and lived with him as his wife. Three witnesses testified that in August, 1922, Dorto introduced them to the petitioner, saying, "This is my wife," and "I make you acquainted with my wife."

A certificate of marriage was put in evidence, showing their marriage on September 23, 1922, at Attleboro, according to the laws of Massachusetts, before Frank S. Babcock, justice of the peace and city clerk of Attleboro. Dorto testified that they had applied to the magistrate on September 9, 1922, to marry them, but had been told that they must wait two weeks, which they did. The fact that they made application to marry and were subsequently married gives support to their testimony that they intended from the first to enter into a permanent union. It appears, also, that the petitioner had been advised by a lawyer in New York that she might remain in the country if she became the wife of an American citizen. According to the testimony of both Mrs. Dorto and Mr. Dorto, there was both mutual love and a desire to enable Mrs. Dorto to remain in the United States as the wife of a citizen, and it is not improbable that without mutual attraction the marriage would not have taken place. It cannot be said that this is a case where the marriage was contracted merely as a form, and solely for the purpose of evading the provisions of the Immigration Law.

The petitioner testified, also, that she was with child, of which Dorto is the father.

Counsel for the petitioner contends that upon the evidence we should find that the parties contracted a common-law marriage in Rhode Island in August, 1922, and therefore by marriage she became a naturalized citizen before the passage of the Act of September 22, 1922, which declared that marriage of a woman to an American citizen does not confer citizenship. It is then argued that, as her common-law marriage made her an American citizen, she thereby acquired a right to remain in this country, irrespective of the fact that she unlawfully entered the country in excess of quota.

Counsel cites Kelly v. Owen, 7 Wall. 496, 19 L. Ed. 283; Compiled Stats. 1916, § 3948, and cases cited in note on page 4820; 14 Op. Attys. Gen. 403; 28 Op. Attys. Gen. 504.

The Circuit Court of Appeals of the Ninth Circuit in Hopkins v. Fachant, 130 Fed. 839, 65 C. C. A. 1, considered the case of the marriage of an alien woman pending proceedings for deportation, and the Circuit Court of Appeals for the Second Circuit, in Re Nicola, 184 Fed. 322, 106 C. C. A. 464, dealt with the case of a woman who had been stopped from entry by the immigration authorities.

In United States v. Tod (C. C. A.) 285 Fed. 523, 26 A. L. R. 1316, the Circuit Court of Appeals of the Second Circuit considered section 19 of the Immigration Act of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), saying:

"Before concluding this opinion, we may add that it has not escaped our observation that Congress, in enacting the Immigration Act of 1917, so as to provide in section 19: 'That the marriage to an American citizen of a female of the sexually immoral classes * * * shall not invest such female with United States citizenship if the marriage of such alien female shall be solemnized after her arrest or after the commission of acts which make her liable to deportation under this act.'

"Two conclusions seem irresistibly to follow from the above change in the law:

"(1) Congress deemed legislation essential to prevent women of the immoral class avoiding deportation through the device of marrying an American citizen.

"(2) If Congress intended that the marriage of an American citizen with an alien woman of any of the other of the excluded classes, either before or after her detention, should not confer upon her American citizenship thereby entitling her to enter the country, its intention would have been expressed, and section 19 would not have been confined solely to women of the immoral class."

As pointed out in these decisions the deportation provisions contained in section 19 do not apply to all persons who have entered the country in violation of the law.

The wife of an American citizen could not be deported, unless of the sexually immoral class, and unless her marriage were solemnized after her arrest, or after the commission of acts which make her liable to deportation under the act. The word "alien," as used in section 19, with the above specific exception, did not include the wife of an American citizen, however she may have entered the country.

[1] In 1917 there was in this country no alien wife of an American citizen, except of a race ineligible to naturalization, and the question whether administrative officers should be intrusted with the power to deprive an American citizen of the consortium of a wife of a race eligible to naturalization was not considered. Because she was a wife of an American citizen, she was granted citizenship if not debarred by race.

"The identity of husband and wife is an ancient principle of our jurisprudence." Mackenzie v. Hare, 239 U. S. 299, 36 Sup. Ct. 106, 60 L. Ed. 297, Ann. Cas. 1916E, 645. In Tinker v. Colwell, 193 U. S. 473, 484, 24 Sup. Ct. 505, 48 L. Ed. 754, it was said of the exclusive right of the husband to marital intercourse and to beget his own children, "This is a right of the highest kind, upon the thorough maintenance of which the whole social order rests, and in order to the maintenance of the action it may properly be described as a property right." "Whatever her citizenship, the domicile of the husband is that of the wife." Anderson v. Watts, 138 U. S. 695, 706, 11 Sup. Ct. 449, 452, 34 L. Ed. 1078. When the contract to marry is executed by the marriage, a relation is created which they cannot change. Maynard v. Hill, 125 U. S. 211, 212, 8 Sup. Ct. 723, 31 L. Ed. 654; citing Ditson v. Ditson, 4 R. I. 87, 101.

[2] The Act of September 22, 1922, has established a new class of aliens—the alien wives of American citizens. The existence of such a class of aliens was not contemplated by Congress in 1917. Did Congress intend by the Act of September 22, 1922, to so enlarge the powers of administrative officers acting under section 19 of the act of 1917 as to authorize them to deport the moral wives of American citizens and to deprive the American husband of the services of his lawful wife, and of the right to have his children brought into the world at his American home, and under the care that it is his duty to bestow upon wife and child?

The Immigration Act, like other laws, must be read to discover the intent of Congress at the time of enactment. Clearly at that time there was no intent to give power to deport the moral wife of an American citizen.

Can we find any such intent in the Act of September 22, 1922? The

subject of that act is naturalization, a matter distinct from the subject of immigration. See U. S. v. Tod (C. C. A.) 285 Fed. 523, 26 A. L. R. 1316. The later act contains no words upon the subject of deportation, and leaves the act of 1917 an independent statute. While the Act of September 22, 1922, provides that any woman who marries a citizen of the United States after September 22, 1922, shall not become a citizen of the United States by reason of the marriage or naturalization of her husband, it makes a special compensatory provision whereby the fact of marriage gives her the right to be naturalized upon her own petition, "if eligible to citizenship."

This woman is of Italian birth, and by race "eligible to citizenship." The remaining provisions relate to the procedure to be followed. Ozawa v. U. S., 260 U. S. 178, 192, 43 Sup. Ct. 65, 67 L. Ed. 199; U. S. v. Tod (C. C. A.) 285 Fed. 523, 527, 528, 26 A. L. R. 1316. Her right to become a naturalized citizen of the United States is made by the statute to depend upon the fact of her marriage. In substance, the act requires from the wife that she shall file a separate petition, the judgment upon which, instead of as formerly a judgment on her husband's petition, shall establish her status as an American citizen.

I am of the opinion, therefore, that her marriage upon September 23, 1922, excludes her from the class of persons who could be deported under section 19 of the act of 1917, and that to deport her would be inconsistent with the right of naturalization which she has acquired by her marriage to an American citizen. It therefore is unnecessary to discuss the authorities cited as to the sufficiency of the testimony to establish a common-law marriage prior to September 23, 1922.

While it is true that her formal marriage one day after the passage of the Act of September 22, 1922, did not make her an American citizen, it did make her the lawful wife of an American citizen.

The act of 1917 conferred upon the administrative officers no right to deport the wife of an American citizen, with certain express exceptions. Under section 1994 of the Revised Statutes (Comp. St. § 3948) she was a citizen. But the reason she was made an American citizen by the statute was because of the ancient principle of jurisprudence, the identity of husband and wife. This principle and the reciprocal rights and duties of husband and wife, still exist, even though the marriage does not at once confer naturalization, but only the right of the wife to become naturalized upon her own petition. She remains an alien until she is naturalized, but an alien of a new class, which did not exist in 1917, an alien who is the wife of an American citizen, and who may become the mother of American citizens. There is no analogy between an alien of this new class, and aliens of the class with which Congress dealt in 1917.

To enlarge the scope of section 19 of the act of 1917 by adding this new class of aliens created by the act of 1922 is to create from the artificial combination of two acts remote in time of enactment, and distinct in subject-matter, a new power in administrative officers.

The importance of the marriage relation is recognized in the recent Immigration Act approved May 26, 1924, which provides in section 4a that the immigrant wife of a citizen of the United States, residing there, shall be classified as a "non quota" immigrant.

I am of the opinion that the petitioner should be discharged, for the reason that the Act of February 17, 1917, as amended, confers no power to deport her.

A draft order may be presented accordingly.