**SMITH, District Director of Immigration, v. UNITED STATES ex rel. GRISIUS.**

**No. 4629.**

Circuit Court of Appeals, Seventh Circuit.

March 18, 1932.

Rehearing Denied May 18, 1932.

George E. Q. Johnson, U. S. Atty., and Thomas Dodd Healy, Asst. U. S. Atty., both of Chicago, Ill., for appellant.

Helen B. Jerry, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Magdute Giraityte Grisius, a native of Lithuania, unlawfully entered the United States from Canada, August 16, 1929, without inspection and not possessed of an unexpired immigration visa. A warrant for her deportation was issued August 23, 1930, upon hearing had. She married appellee, an American citizen, on February 29, 1931. Appellee sought and secured from the District Court a writ of habeas corpus for the freedom of his wife on the ground that she was unlawfully held for deportation. The Director of Immigration appealed. The writ of habeas corpus can be sustained, if at all, on but one ground—the alien's marriage to an American citizen.

Appellee contends that the alien wife of an American citizen is not deportable under the Act of 1917 unless she be a member of the immoral class, which is concededly not a fact in the case before us. He further contends that the act of 1922 did not enlarge the class of deportable aliens, being an act concerning naturalization and not immigration, a contention which we accept for the purpose of this case. Appellee's contention is based upon the Act of 1917, the relevant section of which is set forth in the margin.[1] It provided that a woman of the immoral class might be deported although she married a citizen after her

[1] "The marriage to an American citizen of a female of the sexually immoral classes the exclusion or deportation of which is prescribed by this subchapter shall not invest such female with United States citizenship if the marriage of such alien female shall be solemnized after her arrest or after the commission of acts which make her liable to deportation under this subchapter." Section 19 (8 USCA § 155).

arrest, or after the commission of acts making her otherwise liable for deportation. Such specific provision designating certain aliens, although they are married, as nevertheless liable to deportation, it is argued, evidenced a congressional intent to limit the deportable wives of Americans to the class therein defined. Expressio unius est exclusio alterius. This contention we might accept were it not for the changes in the citizen status of married women resulting from the passage of the so-called Cable Act of 1922 (8 US CA § 368).[2] Prior to the passage of the Cable Act in 1922, and when the 1917 Act was in full force, the citizen status of the wife became that of her husband upon marriage. As such she was not deportable although grounds existed for her deportation prior to her marriage to the American citizen. It was in reference to this state of law that the aforesaid section of the Act of 1917 was addressed. The right of the wife of an American citizen was not traceable to the Act of 1917, but arose out of her status as an American citizen due to her marriage to a husband who was a citizen of the United States. It is worthy of note that the denial of her right to remain in the United States was due to that clause of the above-quoted section which denied her citizenship notwithstanding she married a citizen.

Appellee relies chiefly upon the case of Dorto v. Clark (D. C.) 300 F. 568; Id., 5 F. (2d) 596, 597 (C. C. A. 1). The immigrant there was an Italian woman who was ordered deported because the Italian quota, when she entered, was exhausted. She instituted habeas corpus proceedings which were dismissed. She appealed, and, pending the appeal when she was out on bail, she contracted a common-law marriage with Dorto, and went through a ceremonial marriage one day after the 1922 Act went into effect. She again sought a writ of habeas corpus for her release. The Circuit Court of Appeals sustained the writ, assigning as its sole ground "that the petitioner became an American citizen by virtue of a valid marriage to an American citizen before the Cable Act took effect," and recognizing that the common-law marriage of an alien wife to a citizen conferred citizenship upon the wife. The District

Court took the position that the woman's marriage upon September 23, 1922 (one day after the 1922 Act went into effect) did not make her an American citizen, but did make her the lawful wife of an American citizen, and that she could not be deported under the act of 1917, nor under the Act of 1922, which did not enlarge the 1917 Act's provisions as to deportation. The Circuit Court of Appeals' decision is therefore no authority for appellee. But the District Court's decision is in point.

The District Court in Dorto v. Clark, 300 F. 568, cited in support of its opinion the case of United States v. Tod, 285 F. 523, 26 A. L. R. 1316, decided by the Circuit Court of Appeals for the Second Circuit. The latter court, in United States ex rel. Paolantonio v. Day, Commissioner of Immigration, 22 F. (2d) 914, 916 (1927), however rejected this position. It said: "In Dorto v. Clark * * * the construction contended for by appellant seems to have been adopted; but, with deference to the learned District Judge who decided it, we are, for reasons already stated, unwilling to follow it. * * * (It) was affirmed * * * but upon other grounds; so that it gained no added authority from affirmance."

In the Day Case, supra, the husband and wife were Italian citizens, and had been married in Italy. They came to the United States and were admitted for permanent residence. Thereafter the wife was placed in a state hospital and was certified an insane public charge. She was ordered deported on the ground that she was a person of constitutional psychopathic inferiority at the time of her entry. The next year (1926) her husband became a naturalized citizen, and he then sought to reopen the deportation hearings and, being denied this relief, sought a writ of habeas corpus. The court said: " * * * But it is urged that after the husband's naturalization the act of 1917 ceased to be applicable to the relatrix. The argument is that 'alien' in the act of 1917 must always mean what it meant when the act was passed; that when the act was passed the wife of an American citizen was not deportable, as was held in United States v. Tod (C. C. A. 2) 285 F. 523, 26 A. L. R. 1316; and, therefore, that such a wife was not an 'alien' within the meaning of the act. But the reason that the wife of a naturalized citizen was not deportable was because the husband's citizenship caused her to cease to be an alien, for she herself became a citizen by virtue of section 1994 of the Revised Statutes: * * *

[2] "Any woman who marries a citizen of the United States after September 22, 1922, or any woman whose husband is naturalized after that date, shall not become a citizen of the United States by reason of such marriage or naturalization; but, if eligible to citizenship, she may be naturalized upon full and complete compliance with all requirements of the naturalization laws, with the following exceptions. * * *"

That provision was repealed by the Cable Act of September 22, 1922. * * * Therefore the husband's naturalization in 1926 did not cause his wife to become a citizen. She remained, as she had always been, an alien, as defined in the act of 1917, and under the provisions of section 19 thereof she is still as liable to deportation as she was before her husband's naturalization. It is contended that such construction of the statutes is to enlarge the scope of section 19 of the act of 1917 by adding to it a new class of aliens—alien wives of American citizens. * * * It deals with those already aliens. * * * Until they comply with those terms they remain aliens. * * * Even before the passage of the Cable Act there might be an alien wife of an American citizen in case the wife was of a race not given the privilege of citizenship by the Act of * * *. Further confirmation of the proposition that the alien wife of an American citizen is not exempt from the immigration laws is found in the Immigration Act of 1924 * * * which gives such a wife a nonquota status in certain cases, and in other cases a preference within the quota. The appellant's argument that the relatrix is not an alien within the definition of the Act of February 5, 1917, is therefore without merit. This conclusion, which seems obvious from a consideration of the statutes, also finds support in prior decisions. * * * Appellant draws the inference that the decision would have been different, had the case been one of deportation rather than exclusion. Any such distinction would be illogical. * * *" See, also, United States ex rel. Ulrich v. Kellogg, 58 App. D. C. 360, 30 F.(2d) 984, 71 A. L. R. 1210.

The following conclusions seem inescapable: (a) When the Act of 1917 was passed, a citizen of the United States could not be deported. (b) An alien female marrying a citizen of the United States, by such marriage became a citizen of this country. (c) The 1917 Act made an exception to the existing law as set forth in (b), and denied citizenship to a female alien belonging to the designated immoral class who married a citizen, and it expressly authorized her deportation. (d) The Cable Act of 1922 changed the law respecting the citizen status of an alien female marrying a citizen and left her an alien notwithstanding her marriage. (e) As such alien she was, for causes specified in the Act, subject to deportation. (f) The only way an alien female might defeat deportation when her entry was unlawful was by becoming an American citizen. Inasmuch as citizenship through marriage to a citizen is no longer available to her, an alien female unlawfully entering the United States after the Cable Act of 1922 is subject to deportation if she enter this country unlawfully, notwithstanding her marriage to a citizen of the United States.

The order discharging the appellee's wife is reversed, with directions to proceed in conformity with the views herein set forth.

ALSCHULER, Circuit Judge.

To my mind this case further illustrates the crying need of legislation lodging somewhere a discretion to permit application to be made for lawful re-entry, with due regard to the country's interest respecting immigration, as well as to the equities and humanities of particular cases.