## In re GIACOBBI.

District Court, N. D. New York.

July. 27, 1939.

Rulison, Parker & Ryan, of Syracuse, N. Y., for petitioner-relator.

Ralph L. Emmons, U. S. Atty., of Syracuse, N. Y., and Andrew J. Culick, Asst. U. S. Atty., of Amsterdam, N. Y., for respondent.

COOPER, District Judge.

This is a writ of habeas corpus granted upon the petition of one Andrea Giacobbi, brother of the above-named relator, Salvatore Giacobbi.

The said Salvatore Giacobbi will be hereinafter referred to as the relator.

On May 27th, 1936, J. Arthur Fluckey, the inspector in charge of the Syracuse office of the U. S. Immigration and Naturalization Service, applied for and recommended to the Secretary of Labor that a warrant be issued for the above relator on certain charges, including the charge of sharing in the earnings of a prostitute which is ground for deportation under 8 U.S.C.A. § 155.

The application and, recommendations were based on the evidence obtained by the Syracuse Police Department and upon investigation by Immigration Inspector Michael J. Costello.

The inspector's recommendation was made by telegraph and on May 27, 1936, a warrant for the arrest of the relator was issued by Turner Battle, Assistant to the Secretary of Labor, and transmitted by telegraph in code.

On May 28th, 1936, the department assigned the case to Inspector S. B. Allan, who served the warrant of arrest upon the relator and gave the said relator a hearing and a brief statement of the conduct or charges which were given as cause for deportation.

The first hearing was held by Inspector S. B. Allan at the Police Headquarters, Syracuse, N. Y., on May 28, 1936.

There were present only the inspector and the relator.

The relator was asked his name, which he gave, and asked if he understood the

English language to which he replied in the affirmative.

The record then shows the following:

"You are advised that you have been arrested under the Warrant of the Secretary of Labor, which warrant reads:

"Arrest the following named alien, Salvatore Giacobbi, alias Sam Giacobbi, alias Sam Jacobs, on the charge that he has been found assisting a prostitute and that he has been receiving, sharing in, or deriving benefit from the earnings of a prostitute, and grant hearing, forwarding record of proceedings to the Department. Release under bond in the amount of $2,000."

The alien was informed that if he was deported and attempted to return, he would be guilty of a felony and subject to $1,000 fine and two years' imprisonment.

The alien stated that he understood the nature of the proceedings; that he would try to obtain bail and that he wished to be represented by counsel.

The hearing was adjourned to June 22, 1936, to enable the alien to obtain counsel.

William Ryan, one of the attorneys for the relator, appeared before Inspector Fluckey on May 28, 1936, and demanded the immediate release of the said relator without bond or surety.

On May 29, 1936, one of the attorneys for the relator appeared before the said Inspector Fluckey and insisted that he accept and approve a bond executed by his individual surety, without producing the sureties for questioning. Production of sureties was refused.

On June 1, 1936, attorney for the relator obtained a writ of habeas corpus from a justice of the Supreme Court of the State of New York, addressed only to the Sheriff of Onondaga County, in whose custody the relator then was.

Thereafter, and on June 3, 1936, this surety appeared and executed a bond which was accepted and approved by the Supreme Court justice.

The hearing on the warrant of arrest was delayed from time to time, alleged by the Inspector Fluckey to have been granted for the convenience of counsel for the relator, and the hearing was finally held before Inspector Allan, an inspector of the Syracuse office, on March 30th, 1937.

The return to the writ shows these things:

At the hearing on March 30th, 1937, there were present Inspector Allan, who conducted the hearing, the alien relator, Howard V. Rulison and Wm. A. Ryan, attorneys for the alien relator an interpreter, clerk or stenographer, and all the witnesses whose affidavits were taken except the girl Viola Ladanyi, with various aliases, who will hereafter be referred to as the alleged prostitute.

Inspector Allan informed the relator and his counsel that a hearing was being conducted under the warrant of the Secretary of Labor which warrant was read by the inspector. The inspector stated the charge against the relator.

The inspector then said, according to the record attached to the return:

"I now present for your inspection all of the evidence upon which the warrant of arrest in your case is issued, which consists of copy of affidavit made May 20, 1936 by Violet Ladanyi, alias Violet Mason; copy of affidavit made May 20, 1936, by Elsie G. Rolli, copy of affidavit made May 20, 1936 by Howard F. Kornman; copy of affidavit made May 20th, 1936 by James East; copy of report of Inspector Costello of May 27, 1936 and copy of confirmation of telegraphic application for warrant of arrest.

"You may read or have read to you all the evidence. Do you wish to read it?"

Counsel for the relator then read the evidence and asked to have the evidence read to the alien through an interpreter.

The affidavits of Ladanyi and Rollio were read to the relator in Italian by the interpreters and the remainder of the evidence at the relator's request was read to him in English.

The inspector then informed the relator and his counsel that all the evidence upon which the warrant of arrest was based, the originals of which were on file with the Secretary of Labor in Washington, would be considered, together with such additional evidence as is presented at this hearing in arriving at a decision in the case.

The inspector then asked the relator and his counsel what they had to say in regard to the evidence of the above affidavits and reports.

Counsel for the relator replied that the relator had nothing to say in regard to such evidence as it was in the form of information only and asked that any evidence be

produced in addition to these affidavits on information.

Counsel for the relator demanded opportunity to obtain and make copies of these affidavits and other evidence for the purpose of making a proper defense for his client.

The inspector replied that it was a rule of the Department in such proceedings to loan counsel a copy of the entire record of the hearing for the purpose of submitting a brief, if desired to submit a brief.

Counsel for the relator excepted to the refusal to allow counsel to make a copy of the affidavits on the warrant of arrest.

Upon being informed that the affidavits were to be offered in evidence, counsel for the relator objected on the ground that the affidavits were largely incompetent and particularly because they were mostly hearsay.

Counsel for the relator objected to a hearing before Inspector Allan on the ground that the inspector had charge of the proceedings and prosecution, and therefore was disqualified to act in any judicial capacity in these proceedings.

James East was then sworn and shown the affidavit made on May 27, 1936, and asked if that was his statement and signature, to which he replied in the affirmative. He was then asked if he identified the relator as the person named in the affidavit, and again replied in the affirmative. The affidavit was offered in evidence and objected to by counsel for the relator. Counsel demanded that he be sworn and examined as a witness in the proceedings if his evidence was to be used.

The inspector replied that the witness had been sworn and asked if counsel wished to cross-examine the witness. Counsel for the relator refused to cross-examine the witness on the ground that the witness has so far offered no competent testimony in this proceeding.

The affidavit of James East stated that the relator and Violet Ladanyi lived as husband and wife in a house at 516 East Willow Street, Syracuse, of which he was janitor for some weeks.

William Kornman was sworn as a witness and identified two affidavits made by him, one at the Police Headquarters on May 20, 1936, and one before Immigration Inspector Costello on May 27, 1936.

The first was used as part of the information on which the Secretary's warrant of arrest was issued. He claims there was some error in the affidavit taken at Police Headquarters on May 20, 1936.

In one or both of these affidavits he stated that he heard the relator ask his wife if she could use a girl at the house of prostitution conducted by his wife until her death and afterward by the witness. He also said that he heard the alleged prostitute tell his wife that she gave the relator about $20 per week out of her earnings as a prostitute.

Counsel for the relator objected to the receipt of the affidavits and demanded the witness be examined and give testimony on the hearing.

The affidavits were received and counsel was asked if he desired to cross-examine. Counsel stated that he desired to cross-examine the witness only on the affidavit of May 20, 1936, used as information on which the warrant was issued.

He admitted that his wife ran the house as a house of prostitution and that after her death he rented the house to the girl occupants, that it was house of prostitution and that he lived there.

He said he saw the relator come to the house; that the alleged prostitute was in his house about a year from February, 1935, to February, 1936. His wife died in April, 1936.

Elsie Rollio, sister of the alleged prostitute, was sworn and identified the affidavit made by her which was offered and received over objection of counsel for the relator.

She likewise had made two affidavits, one on May 20, 1936, and the other on May 27, 1936. The former was used as information on which warrant of arrest was issued by the Secretary. She swore in one or both affidavits, that the relator suggested to her in 1935 that she leave her husband and enter a house of prostitution or that he would send men to her for sexual intercourse at her own home.

Counsel for the relator said he would cross-examine her only on the affidavit of May 20, 1936.

Upon such cross-examination she said her sister accompanied her on one or more occasions when she took her children to the relator's barber shop for hair-cuts.

This witness said that she went to see her sister at the house of prostitution, and that she had seen her sister enter the place,

and when she asked to see her sister, Mrs. Kornman said her sister was not there.

Two police officers were sworn on this hearing. One, Carmen Luzzo, testified that he had been sent to bring the alleged prostitute to the police station in the summer of 1936, and that her reputation was that of a prostitute.

He said that about a week before the hearing he told the relator at his barber shop, that Chief Humphrey wanted to see the alleged prostitute, and the relator said he would have her there the next morning between 10:30 and 11. Counsel for the relator asked the witness a question about the Kornman house as known to the police for years as a house of prostitution and when the inspector refused to permit the question, refused to further cross-examine the witness.

Anthony B. Trebiec, another police officer, testified to the conversation given by witness Luzzo that the relator promised to leave the alleged prostitute at Chief Humphrey's office the next day at 10 or 11 o'clock.

There was very brief cross-examination of this witness.

John A. Maloney, an Acting Immigration Inspector, testified that he had seen the relator and the alleged prostitute go into a café about three weeks before the hearing. There was no cross-examination of this witness.

Michael Costello, Immigration Inspector, testified as to diligent but unsuccessful effort to locate the alleged prostitute.

The witness identified the affidavit of the alleged prostitute made before him on May 28, 1936, which was received over objection of counsel for relator.

In the affidavit, the alleged prostitute swore that the relator took her to the Kornman house for prostitution and that she gave the relator $20 per week of her earnings. There was no cross-examination.

There were apparently three affidavits by the alleged prostitute, one dated May 20th, and two dated May 28, 1936, and all were offered and received in evidence with a statement by the inspector that he had personally accompanied Inspector Costello in the effort to locate her, and that she could not be found.

One Angelo Carraci, a barber, was sworn as a witness and testified that he had long known the relator and that he had on July 6, 1936, made a sworn statement concerning the latter and the alleged prostitute whose photo he identified, and that the statements therein were true. This affidavit was offered and received in evidence over the objection of counsel for the relator, who declined to cross-examine the witness.

Carraci in his affidavit said that he had frequently seen the relator and the alleged prostitute together, that he had seen her come out of houses of prostitution and had frequently seen the relator and the prostitute meet late at night.

The relator himself was then sworn by the inspector and asked various questions about his arrival in the United States, his noncitizenship, his family, business and property, his service in the Italian army, and was then asked about his record of arrests, his relationships with the alleged prostitute, but on advice of counsel the relator refused to answer. Counsel objected on the ground of indictment pending in the state court. There was no cross-examination and the relator gave no testimony on his own behalf.

It appears that subsequent to such hearing a full and complete transcript of the report was furnished to counsel for the alien relator herein and that said counsel was permitted and had filed a brief, in which such brief, together with transcript of testimony taken at said hearing and all statements or exhibits introduced in this case at said hearing, were forwarded to the Secretary of Labor for her consideration. The return also asserts that the alien-relator was given a full and fair hearing in accordance with the laws of the United States and the requirements of the Commissioner of Immigration and Naturalization applicable thereto, and there was sufficient evidence to justify the Secretary of Labor of the United States to make a finding that the above named alien-relator had been engaged in illegal practices with which he was charged in violation of Section 19 of the Act of 1917, 8 U.S.C.A. § 155, while resident within the United States.

The return annexes a copy of the warrant issued by Turner W. Battle, Assistant to the Secretary of Labor in full, and also decoded warrant of arrest, the order of arrest, both formal and decided, as dated May 27, 1936. The return also annexed warrant of deportation signed by Turner W. Battle, Assistant to the Secretary of Labor, dated October 27, 1937, in which appears the following: "Whereas, from proof submitted

to me, Assistant to the Secretary, after due hearings before an authorized immigration inspector, I have become satisfied that the alien (giving his name) who entered the United States on the steamship "Colombo" on the 6th day of September, 1923, is subject to deportation under Section 19 of the Immigration Act of February 5th, 1917 (8 U. S.C.A. Section 155), being subject thereto under the following provisions of the Laws of the United States, to wit, the Act of 1917, in that he has been found receiving, sharing in and deriving benefit from the earnings of a prostitute and that he has been found assisting a prostitute."

The warrant of deportation has not yet been executed because of issue by this court of writ of habeas corpus.

The objections are many. These objections as stated in the brief of counsel, are as follows:

1. The Immigration Department has no jurisdiction in the premises.

2. The Immigration Inspector, S. B. Allan, was disqualified to conduct a hearing.

3. The alien was deprived of his rights guaranteed him under the treaty between Italy and the United States.

4. The rule permitting immigration inspectors to conduct hearings was in violation of law.

5. The two hearings of S. B. Allan (inspector) were in violation of the rule of the Commissioner General of Immigration, in that said rule prohibits an inspector from conducting such hearings.

6. Conceding for argument's sake that S. B. Allan, inspector, had authority to conduct a hearing, nevertheless such hearings were unfair and not in conformity with law.

7. The warrant of deportation is invalid, null and void as far as the determination of the alien's deportation was not made by the Secretary of Labor but by one of the two Assistant Secretaries of Labor, or by either one of the two Assistants to the Secretary of Labor.

8. The alien was deprived of his rights under the Federal Constitution and the Constitution of the State of New York.

9. The findings that the alien had been found sharing in the earnings of a prostitute and of assisting, is contrary to and not justified by the evidence.

10. It was not fair on the part of the inspector, S. B. Allan, to attempt to compel the alien to give evidence against himself, since Allan well knew that the alien was under indictment by the Grand Jury of Onondaga County for violation of Section 2460 of the Penal Law of the State of New York, involving the prostitute mentioned in this proceeding and subsequent charge and the conduct of the alien, which is the basis of the deportation proceedings.

Under Section 19 of the Labor Law, 8 U.S.C.A. § 155, it is provided: "In every case where any person is ordered deported from the United States under the provisions of this subchapter, or under law or treaty, the decision of the Secretary of Labor shall be final."

It is well settled that Congress has the authority to forbid by statute aliens coming to the United States and to require their expulsion for any reason satisfactory to the Congress of the United States and may grant to the Executive Department the right and duty to execute laws providing for their expulsion for violating the conditions of their continuing in the United States. Zakonaite v. Wolf, 226 U.S. 272, 275, 33 S.Ct. 31, 32, 57 L.Ed. 218. In this case the court said: "It is entirely settled that the authority of Congress to prohibit aliens from coming within the United States, and to regulate their coming, includes authority to impose conditions upon the performance of which the continued liberty of the alien to reside within the bounds of this country may be made to depend; that a proceeding to enforce such regulations is not a criminal prosecution within the meaning of the 5th and 6th Amendments; that such an inquiry may be properly devolved upon an executive department or subordinate officials thereof, and that the findings of fact reached by such officials, after a fair though summary hearing, may constitutionally be made conclusive, as they are made by the provisions of the act in question. Fong Yue Ting v. United States, 149 U.S. 698, 730, 13 S.Ct. 1016, 37 L.Ed. 905, 919; United States v. Zucker, 161 U.S. [475], 481, 16 S.Ct. 641, 40 L.Ed. [777], 779; Wong Wing v. United States, 163 U.S. 228, 237, 16 S.Ct. 977, 41 L.Ed. 140, 143; United States ex rel. Turner v. Williams, 194 U.S. 279, 289, 24 S.Ct. 719, 48 L.Ed. 979, 983; Chin Yow v. United States, 208 U.S. 8, 11, 28 S.Ct. 201, 52 L.Ed. 369; Tang Tun v. Edsell, 223 U.S. 673, 675, 32 S.Ct. 359, 56 L.Ed. 606, 607; Low Wah Suey v. Backus, 225 U.S. 460, 468, 32 S.Ct. 734, 56 L.Ed. 1165, 1167."

It follows, therefore, that the relator's contention that all suits and proceedings under any law regulating the expulsion of aliens must take place in the United States District Court must be overruled.

All contentions that the laws of the State of New York or the Constitution thereof have application to the Immigration Law must also be denied, for the admission or expulsion of aliens is solely a question for the sovereign United States.

Cases like Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288, relative to the review of acts of the Department of Agriculture or any other department of the government other than that of the Department of Labor or Immigration cases are without analogy.

So, also, the rule about taking the depositions of witnesses who were not more than 100 miles from the place of trial under Section 656 of the United States Judicial Code, 28 U.S.C.A., is likewise without application.

An alien who claims he was not given a fair hearing in a deportation proceeding may have a court determination of the fairness of the hearing by means of a writ of habeas corpus. That appears to be his sole remedy.

The contention that Inspector Allan was disqualified to conduct a hearing because he acted as prosecutor, judge and jury, must also be denied. He was not in fact the one who obtained the warrant or interviewed the witnesses and obtained affidavits.

Even if the inspector had acted as investigator, prosecutor and judge, those facts do not constitute denial of a fair hearing in the absence of showing of actual prejudice. Reynolds v. United States ex rel. Dean, 7 Cir., 1934, 68 F.2d 346.

Nor did the act of Allan in holding these proceedings constitute violation of the rules of the department because he did not in fact act in all such capacities. He was not an investigator, nor was he a witness.

The relator's contention that the warrant of deportation must be signed by the Secretary of Labor cannot be sustained. The warrant may be signed by an Assistant of the Secretary of Labor. United States on Petition of Rocco ex rel. Constantino v. Karnuth, District Inspector of Immigration et al., D.C., 35 F.2d 601.

This case was affirmed in 2 Cir., 31 F.2d 1022 and certiorari was denied in 280 U.S. 570, 50 S.Ct. 28, 74 L.Ed. 623.

See, also, Restivo v. Clark, 1 Cir., 90 F.2d 847; Ponzi v. Ward, D.C., 7 F.Supp. 736.

The chief question then is whether the alien had a fair trial.

From the record it appears that on the hearing of March 30th, 1937, all the witnesses were produced and sworn except the alleged prostitute herself. These witnesses were not asked to give again the statements contained in their affidavits, but were shown the affidavits and their signatures and asked if the affidavits were true and the affidavits were offered and received in evidence, and the relators counsel was given opportunity to cross-examine them. In several instances counsel declined as heretofore shown. Except in the case of Carmen Ruzzo, no objection was made to any questions, and then only as to one question, namely, whether he was familiar with the house of prostitution in which the prostitute resided. Counsel should have been allowed to ask that question since it may have gone on the credibility of the witness, but having been denied that right they were at liberty to cross-examine the witness concerning the statement in his affidavit and they declined to do so.

Counsel for defendant lays much stress on the fact that they never had the affidavit nor copies thereof until after hearing was closed. It appears that they read the affidavits at the time of the hearing. If the affidavits were too many or too voluminous, they might have asked for an adjournment, but they did not.

Counsel for the relator urges that the inspector violated the Rules and Regulations of the Secretary of Labor, particularly Rule 28, Subdivision B. and Rule 19, Subdivision D, Paragraph 2, relating to such information.

Rule 28, Subdivision B reads as follows: "Attorneys and others representing aliens applying for admission to the United States territories, or insular possessions shall be permitted, until deportation has been effected, to review the records in immigration offices in all cases in which the appearance of such attorney or other representative has been duly noted of record. Until deportation has been effected, attorneys and other representing aliens on warrant proceedings upon request, shall be furnished with a copy of the testimony adduced and

motions thereon and the summary of the examining inspector for the preparation of their briefs. The attorney or other representative to whom such copy has been furnished shall give a receipt for the copy of the testimony and shall pledge himself to surrender the copy when his brief is submitted."

Rule 19, Subdivision D, Paragraph 2, reads as follows: "At the hearing under the warrant of arrest, the alien shall be allowed to inspect the warrant of arrest and shall be advised that he may be represented by counsel. The alien shall be required then and there to state whether he desires counsel or waives the same, and his reply shall be entered upon the record. If counsel be selected, he shall be permitted to be present during the conduct of the hearing and to offer evidence to meet any evidence presented or adduced by the Government. Objections of counsel shall be entered on the record but the reasons for such objections shall be presented in accompanying brief. If, during the hearing, it shall appear to the examining inspector that there exists a reason additional to those stated in the warrant of arrest why the alien is in the country in violation of law, the alien shall be notified that such additional charge shall be placed against him and he shall be given an opportunity to show cause why he should not be deported therefor."

It will be seen that subdivision B of Section 28 appears to relate only to aliens applying for admission rather than to deportation proceedings for resident aliens. Even if it applies also to proceedings for the deportation of resident aliens, whether or not it was departed from, depends on the construction of Subdivision B.

The words "Until Deportation has been effected" would seem to cover all time from the arrival of the alien or his detention.

But the statement of what is to be furnished, viz, "a copy of the testimony adduced and motions therein." seems to require the furnishing of a copy only after the hearing.

In this construction the rule was not violated.

Rule 19, Subdivision D, Paragraph 2, seems not to have been violated.

■ It appears by the record that counsel was refused copy of affidavits and testimony until after the hearing.

No good reason appears why counsel should not immediately have been furnished with copies of the affidavits and statements on which the order of arrest was granted. The rules should be amended in this respect.

Had application been made to the Secretary of Labor instead of to the inspector, copies might have been furnished.

About ten months elapsed between the arrest and final hearing, during all of which time counsel were acting for the relator. It seems reasonable to conclude that counsel had or could have obtained substantial knowledge of who the witnesses were and what they swore to in the affidavits. They saw the affidavits at the final hearing and knew their exact contents.

Counsel for the relator say that they had no knowledge of the affidavits made May 28, 1936, until the later receipt of a copy of the record of the hearing of March 30, 1937. But the affidavits were offered and received in evidence at the hearing. They had opportunity to read them and know the contents.

It does not make an unfair hearing if they did not do so.

The witnesses, save the alleged prostitute, were produced on the final hearing and cross-examination was offered, accepted in some cases and refused in others.

No adjournment was asked for further cross-examination or the production of witnesses.

It is reasonable to conclude that there was no more than a technical deprivation of full knowledge of the evidence against the relator. And that could have been removed by application for adjournment of the hearing.

Counsel for the relator did not offer any evidence of any kind to controvert the proof before Inspector Allan. It is a reasonable conclusion that they had no such evidence, for they neither offered it nor asked for an adjournment to offer it, nor did they at any time ask for a re-opening of the hearing, that they might introduce evidence, nor cross-examine the witness whose affidavits were offered in evidence.

■ While a deportation is a civil proceeding and not a criminal proceeding, the evidence is not required to be presented as upon a civil trial. The Inspectors of Immi-

gration are not lawyers and there is no inference to be obtained from the statute that they should be lawyers or have to learned in the law. Ordinary rules of procedure do not apply. United States ex rel. Smith v. Curran, 2 Cir., 12 F.2d 636; Cahan v. Carr, 9 Cir., 47 F.2d 604, certiorari denied Cahan v. United States, 293 U.S. 862, 51 S.Ct. 655, 75 L.Ed. 1467.

It has been held that deportation proceedings were not unfair even though the alien was denied opportunity for cross-examination of certain witnesses. Caranica v. Nagle, 9 Cir., 23 F.2d 545, certiorari denied, 277 U.S. 589, 48 S.Ct. 437, 72 L.Ed. 1002.

■ Here he was given the opportunity except only in the case of the alleged prostitute who could not be found or produced.

Use of ex parte affidavits is not fatal to a fair hearing. Imazo Itow v. Nagle, 9 Cir., 24 F.2d 526; Ghiggeri v. Nagle, 9 Cir., 19 F.2d 875. See, also, George v. United States, 5 Cir., 68 F.2d 513, certiorari denied, 292 U.S. 634, 54 S.Ct. 713, 78 L.Ed. 1487; Hays v. Zahariades, 8 Cir., 90 F.2d 3, certiorari denied 302 U.S. 734, 58 S.Ct. 119, 82 L.Ed. 567.

The conduct of the alien in relying upon the purely technical defense forms a basis for inference which is equivalent to evidence against him. Chan Nom Gee v. United States, 9 Cir., 57 F.2d 646.

■ Failure to produce the alleged prostitute as a witness was not fatal, especially when the officers made every effort to produce her and her affidavit was receivable in evidence. Quock So Mui v. Nagle, 9 Cir., 11 F.2d 492.

Furthermore, there was evidence which warrants the presumption that the alien may have prevented her appearance. Moreover, there was sufficient evidence without the affidavit of the alleged prostitute.

■ The contention that the statute of 1917, 39 Stat. 874, is in conflict with the treaty between the United States and Italy and that, therefore, the hearing was invalid, and the rights of the alien not protected in accordance with the treaty, cannot be sustained. The treaty referred to is the treaty of 1871, 17 Stat. 845. The act of Congress under which the alien was admitted was passed in 1917. While this treaty provides that the alien shall enjoy constitutional protection and the security of their persons and property, as do natives, and that the alien should have free access to the courts of the United States, it furnishes no obstacle to the deportation of an alien who is admitted to the United States after the enactment of this statute and who is subject to its laws. (This alien came in 1923.)

■ Even if there were conflict, the duty of the court is to follow the laws of the legislative branch, leaving the question of treaty status to the executive authority of the government. Ex parte Gin Kato, D. C., 270 F. 343.

■ The fact that the charge against the relator in the state court was a felony is immaterial. This is not a trial for such offense. Deportation proceedings are civil and not criminal in their nature. Deportation is not punishment in a legal sense but is enforcement of a right of the sovereign to enforce the right of deportation contained in its statutes for an alien, who, by his conduct in violation of such statutes, makes himself subject to deportation.

■ It follows, therefore, that an alien does not have such rights as does a citizen or alien who is indicted and tried for violation of the criminal laws of the United States or of one of the states. The rule of proof in deportation proceedings is not proof beyond a reasonable doubt but such a hearing as will enable the alien to present his proof or evidence that he has not made himself a subject to deportation. Here no evidence was offered by the alien relator and the statute makes the decision of the Secretary of Labor final and not subject to review.

■ The sole jurisdiction of the court is to determine that the alien has had a fair hearing. The court cannot pass on the weight of evidence.

■■ Relator also asserts that Turner W. Battle, Assistant to the Secretary of Labor, did not read the record in this proceeding nor the brief of counsel for the relator; that the actual decision was made by one of ten members of the Board of Review, established in the Department of Labor without any warrant or authority of law.

It is also alleged that he never read the telegraphic information upon which the warrant of arrest was issued nor the warrant itself which he signed; that the suffi-

518

ciency of such information was passed upon by some employee of the Labor Department without authority to do so.

The legal presumption is that public officers do their duty.

In many instances it is a rebuttable presumption but that presumption cannot be overthrown without proof. The burden of overthrowing the presumption is upon the relator and no evidence to that effect has been offered by him.

■ If the so called Board of Review is without authority of law, it does not change the authority or responsibility of the Secretary of Labor or her assistants. They may ask and receive help or advice from anyone, official or unofficial, but the responsibility always remains with the public officer having the power and duty.

■ The fact that the record does not show the release of the relator upon bond in a habeas corpus proceeding in the state court has no bearing upon the sole important question of a fair hearing.

■ Whatever happened before the hearing, as a result of which the warrant of deportation was issued, is of little moment unless it tends to show that the hearing was unfair.

It cannot be said to have any material bearing upon the fairness of the hearing.

The same is true of the other acts or omissions from the record, which relate to happenings before the final hearing.

■■ It is undoubtedly true that the record of the arrests of the relator were not competent evidence upon the hearing. Nothing but convictions are competent and even these on a criminal trial are competent only upon cross-examination of the defendant as bearing upon the question of credibility, except in certain cases where it is necessary to prove intent, in which case previous convictions of like acts are sometimes competent on the question of intent. No such question is here involved.

While such evidence on a criminal trial might require reversal of a conviction, this is not a criminal trial, and since there was sufficient proof of the charge of sharing in the earnings of a prostitute, such error does not establish an unfair hearing.

Aside from technical matters without substantial merit, it cannot be held that the relator did not have a fair hearing, and the writ must be dismissed.