## UNITED STATES ex rel. GAGLIARDO v. KARNUTH.

### No. 282, Docket 20200.

Circuit Court of Appeals, Second Circuit.

July 10, 1946.

---

Israel Rumizen, of Buffalo, N. Y., for appellant.

George L. Grobe, U. S. Atty., and R. Norman Kirchgraber, First Asst. U. S. Atty., both of Buffalo, N. Y. (Frank G. Pugsley, of Buffalo, N. Y., of counsel), for appellee.

Before SWAN, CLARK and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from the discharge of a writ of habeas corpus in deportation proceedings. The relator is detained under a warrant which directs her deportation to Italy, and the principal question presented. by the appeal is whether her deportation to Italy is authorized under 8 U.S.C.A. § 156.

The relator is an alien who was born of Italian parents in Italy in 1905. At the age of seven she came with her mother to

Toronto, Canada, to reside with her father, who had previously emigrated to Canada. In 1914 her father obtained a Canadian certificate of naturalization, and thereby she also became a British subject under the Naturalization Act of Canada. In 1920 the relator was married in Toronto to Angelo Briorio, a native of Italy and, so far as the record shows, an Italian citizen. She lived with Briorio as his wife for less than a year and claims that she left him because she discovered that at the time of his marriage to her he had a wife living in Italy. The relator first entered the United States in 1924; she returned to Canada in 1932 and resided there until 1934, when she again entered the United States; she has ever since made her home in Niagara Falls, New York. In August 1939 she went to Canada for a temporary visit to attend the funeral of her sister and returned to the United States about two weeks later. Her return was a new entry and was illegal, and was followed by her arrest on a warrant in October 1939. The warrant of arrest charged that her entry on August 20, 1939 violated the 1924 Act, 8 U.S.C.A. § 201 et seq., in that she was not in possession of an unexpired immigration visa, and the 1917 Act, 8 U.S.C.A. § 136 et seq., in that she entered by means of false statements, thereby entering without inspection, and in that she has been found managing a house of prostitution or other place habitually frequented by prostitutes. A hearing, at which the relator was represented by counsel, was had before an immigration inspector, who made findings sustaining the charges and recommended the relator's deportation but named no country to which she was to be deported.[1]

Thereafter a warrant of deportation was issued, dated June 16, 1941, directing the relator's deportation to Italy.[2] From the respondent's return to the writ of habeas corpus it appears "that on November 29, 1939 the Canadian Immigration Authorities refused to grant an application made by the United States Immigration and Naturalization Service to deport the relator herein to Canada, and declined to accept and admit her into Canada as a deportee from the United States." The warrant of deportation was not served upon the relator until October 10, 1945. In the meantime, in 1941, after the date of the warrant, she had married John Gagliardo, an American citizen. Upon her arrest under the deportation warrant she forthwith sued out the present writ of habeas corpus. Upon the writ, the respondent's return thereto and the relator's traverse to the return, a hearing was had in the district court. From the order discharging the writ the relator has appealed.

That the relator's entry in August 1939 was illegal and that she is subject to deportation is not disputed; see United States ex rel. Natali v. Day, 2 Cir., 45 F.2d 112, 113. She contends, however, that she cannot be deported to Italy because of her Canadian naturalization. This involves the application of section 20 of the Immigration Act of 1917, as amended, 8 U.S.C.A. § 156, printed in the margin.[3] Judge Hough construed this statute in United States ex rel. Karamian v. Curran, 2 Cir., 16 F.2d 958, 960, and we have frequently followed it. Since the relator entered the United States from Canada and Canada refuses to permit her reentry, the Attorney General may, under the last

---

[1] The date of the inspector's recommendation does not appear. The final hearing before him was on March 8, 1940. The relator's counsel was to file a brief thereafter but whether he filed one and, if so, on what date, is likewise undisclosed by the record.

[2] The warrant was signed by W. W. Brown, Chief of the Warrant Branch of the Immigration and Naturalization Service of the Department of Justice, such Service having been transferred to the Attorney General's office June 14, 1940, Reorganization Plan No. 5, 5 U.S.C.A. following section 133t.

[3] "§ 156. Ports to which aliens to be deported; cost of deportation.

"The deportation of aliens provided for in this chapter shall, at the option of the Attorney General, be to the country whence they came or to the foreign port at which such aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign port at which they embarked for such territory; or, if such aliens entered foreign contiguous territory from the United States and later entered the United States, or, if such aliens are held by the country from which they entered

clause of the section, deport her "to the [foreign] country in which [she] resided prior to entering the country from which [she] entered the United States," that is, to Italy. In the quotation we have interpolated the word "foreign" because otherwise the word "country" might include the United States itself under facts like the present, which would clearly violate the legislative purpose, since deportation necessarily means removal of the alien from the United States. Cf. Thack v. Zurbrick, 6 Cir., 51 F.2d 634, 636. The refusal of Canada to permit the relator reentry was made by Canadian Immigration Authorities, and the relator argues that the clause in § 156 "if such aliens are held by the country from which they entered the United States not to be subjects or citizens of such country," does not mean that the immigration officials of such country have power to decide that issue. But if not they, who is to make the decision? Certainly our own immigration officers cannot be expected to attack this administrative ruling in the Canadian courts. Nor are our courts supposed to determine the issue, for the aliens are to be "held" non-citizens "by the country from which they entered." Whether the relator herself could judicially challenge the administrative ruling in a Canadian court we do not know, nor need we consider. So far as appears she has not done so, nor does she desire to do so. No case has been found supporting the relator's contention; on the contrary the precedents seem to accept without question the refusal of Canada to receive a deportee. See United States ex rel. Natali v. Day, 2 Cir., 45 F.2d 112, 113; United States ex rel. Boraca v. Schlotfeldt, 7 Cir., 109 F.2d 106, 110; Gorcevich v. Zurbrick, 6 Cir., 48 F.2d 1054, 1055; Bukta v. Zurbrick, 6 Cir., 50 F.2d 593, 595, the last three providing for the contingency of Canadian refusal. Therefore even granting that the

relator's marriage to Briorio was a nullity, her deportation to Italy was within the Attorney General's authorized option.

The other points argued by the appellant deserve but little discussion. The claim that the warrant of deportation is fatally defective because it does not specify the sections of the 1924 and 1917 Acts which she violated is fantastic. Even an indictment need not specify the statute which is violated. See United States v. Kolodny, 2 Cir., 149 F.2d 210, 211. The warrant did set out the illegal acts which justify the deportation and that is sufficient.

The point that the warrant was not signed by the Attorney General or an Assistant Attorney General is equally futile. The Regulations delegate authority to the Warrant officer. Reg. § 90.14, 5 F. R. 3502; see In re Giacobbi, D.C.N.D.N.Y., 32 F.Supp. 508, 515, affirmed United States ex rel. Giacobbi v. Fluckey, 2 Cir., 111 F.2d 297.

The long delay in serving the deportation warrant is adequately accounted for by the war conditions in Europe. While we were at war with Italy deportation was clearly impossible, and the period between the date of the warrant and our becoming a belligerent was not sufficient to invalidate the warrant. See United States ex rel. Ross v. Wallis, 2 Cir., 279 F. 401, 403; United States ex rel. Consola v. Karnuth, D.C.W.D.N.Y., 63 F.Supp. 727.

There is no merit in the contention that the hearings on the warrant of arrest were unfair. They were conducted in accordance with the Regulations in force at the time. The Regulations adopted after the Immigration and Naturalization Service was transferred to the Department of Justice were inapplicable. See Reg. § 150.14.

Judgment affirmed.

---

the United States not to be subjects or citizens of such country, and such country refuses to permit their reentry, or imposes any condition upon permitting reentry, then to the country of which such aliens are subjects or citizens, or to the country in which they resided prior to entering the country from which they entered the United States."