**UNITED STATES ex rel. WICZYNSKI v. SHAUGHNESSY.**

No. 42, Docket 21735.

United States Court of Appeals
Second Circuit.

Argued Nov. 1, 1950.

Decided Nov. 22, 1950.

William J. Sexton, New York City,
Irving H. Saypol, United States Attorney,
New York City, Louis Steinberg, District
Counsel, Immigration and Naturalization
Service, United States Department of
Justice, and Lester Friedman, Attorney,
Immigration and Naturalization Service,
United States Department of Justice, New
York City, of counsel, for appellant.

Alfred S. Holmes, New York City,
Joel G. Watsky, New York City, for appellee.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

L. HAND, Chief Judge.

This is an appeal from a final order on a writ of habeas corpus discharging an alien from custody under an order of deportation. The only question is whether the order of deportation directed the alien to be delivered to a destination authorized by the statute. The facts were as follows. Wiczynski, the alien, was born in the city of Danzig in 1907 while that city was within the German Reich; he was therefore a German subject. He first came to this country in 1927 and lived here until 1933 when he went back to Danzig—then a "free city"—where he stayed until 1937. During the early part of that year he bought a through ticket from Danzig to the United States by way of Hamburg; and on June 3, 1937, at Danzig, he obtained a visa for entry to this country. Late in July, or early in August, he took passage from Danzig on a vessel bound for Hamburg, which reached Hamburg via Visby, Sweden, on August 3rd; and he left Hamburg the next day on board the steamer, "President Harding," and arrived in New York on the 14th. He has been in this country ever since, has married and has declared his intention to become a citizen. In July, 1941, he was indicted along with thirteen others for failing to register as the agent of a foreign government and for espionage; and he was convicted of both offences. One of his co-defendants appealed from this judgment, and we reversed the conviction for espionage;[1] but Wiczynski had no money to appeal and was obliged to serve a sentence of twelve years for espionage, to which had been added a concurrent sentence of two years for failing to register. While serving this sentence the proper official in September, 1942, served a warrant of deportation upon him and several hearings were held, which after more than four years ended in an order directing his deportation to Danzig, if that were practicable, otherwise to Ger-many. Upon review the Board of Appeals changed the destination to Hamburg, as the port whence he "embarked" for the United States, and a warrant was issued accordingly.

█ Upon habeas corpus the judge held that Wiczynski had been upon a continuous voyage from Danzig to the United States; that therefore he had not "embarked" from Hamburg; and that pro tanto the order and the warrant were not authorized by law. He released him from custody because it was impossible to deport him to Danzig. Besides raising this objection to his deportation Wiczynski also asserted that the deportation proceeding had been unfair, because he had not been allowed time within which to retain an attorney. The judge did not decide this point; but we will dispose of it summarily. The first hearing before the inspector was on November 20, 1942, at which Wiczynski said that he "would like to have an attorney, but it will take some time to make the necessary arrangements." The second hearing was on May 25, 1943, at which he had not yet retained an attorney and again asked a continuance, which was granted. The third hearing was on October 3, 1943, at which he still had no attorney, but declared that his wife had a job and might get enough money to retain one; and once more a continuance was granted. The case came on for a fourth time on May 4, 1945, when he said that his attorney was still in the army and that he had no money to retain an attorney. The inspector refused to wait any longer and decided to deport him as a person who had been convicted for failing to register and for espionage, each being a ground for deportation. We cannot see what course, after a delay of two and a half years, the inspector could have taken but to conclude the hearings. Much might be said for giving an alien the privilege of retaining an attorney in such cases at the public expense; but that has not been done, and Wiczynski was certainly given a reasonable time to retain one at his own expense. Fortun-

---

1. United States v. Heine, 2 Cir., 151 F. 2d 813.

ately, as it turns out, he has not suffered, for the only questions open at the hearings before the inspector and the Appeal Board remained open before the district court, at which he was ably represented by an attorney.

We fully share the judge's indignation at the injustice which Wiczynski suffered. After it had appeared that his sentence of twelve years was invalid, it is shocking to learn that he was compelled to serve it because he was too poor to take an appeal. Nevertheless, that is irrelevant to his deportation, which his conviction for failing to register in any event authorized. Thus the only question is of the validity of the order on appeal, which released him from custody because the warrant directed his deportation to Hamburg. On September 23, 1950—which was after the order was entered—§ 23, of the Internal Security Act of 1950 amended § 20(a) of the Immigration Act of 1917[2] as to the places to which an alien may be deported, so as to make it read, so far as it is here relevent, as appears in the margin.[3] We have just held that we must dispose of orders entered in habeas corpus proceedings according to the law as it exists at the time when we decide the appeal, not at the time when the order itself was entered;[4] so that we are to decide whether the warrant is now right in designating Hamburg as the place of Wiczynski's return. Whether that port may in the end turn out to be a proper destination we cannot say; but in any event the warrant is wrong as it stands,

because Wiczynski has never been given the option to select the place to which he is to be sent, nor has the Attorney General chosen it from among those which become open to him, if Wiczynski does not select one. For this reason, the order was also wrong in releasing him unconditionally, because he is clearly deportable, unless no lawful destination can be found. The order must therefore be reversed, and the case must be remanded to the Attorney General for disposition in accordance with § 20(a) of the Immigration Act of 1917,[5] as it now reads.

Wiczynski challenges this disposition of the appeal because he says that a part of § 20 is unconstitutional: viz., that provision of § 20(c), which makes certain classes of aliens guilty of felony, "against whom an order of deportation is outstanding", and "who shall willfully fail or refuse to depart from the United States within a period of six months". The argument is that this is a manifest fetch "to permit the internment of aliens who are not deportable"; and that it is "inconsistent with our standards of democracy," whatever that may mean. This position is so patently untenable that we shall not discuss it beyond observing that this language covers only those aliens who, being ordered to leave, deliberately disobey the order. By no conceivable possibility could it apply to aliens who "are not deportable" because no country can be found to receive them.

Order reversed; cause remanded.

2. § 156, Title 8 U.S.C.A.

3. "That the deportation of aliens provided for in this Act and all other immigration laws of the United States shall be directed by the Attorney General to the country specified by the alien, if it is willing to accept him into its territory; otherwise such deportation shall be directed by the Attorney General within his discretion and without priority of preference because of their order as herein set forth, either to the country from which such alien last entered the United States; or to the country in which is located the foreign port at which such alien embarked for the United States or for foreign contiguous territory; or to any country in which he resided prior to entering the country from which he entered the United States; or to the country which had sovereignty over the birthplace of the alien at the time of his birth; or to any country of which such an alien is a subject, national, or citizen; or to the country in which he was born; or to the country in which the place of his birth is situated at the time he is ordered deported; or, if deportation to any of the said foregoing places or countries is impracticable, inadvisable, or impossible, then to any country which is willing to accept such alien into its territory."

4. United States ex rel. Pizzuto v. Shaughnessy, 2 Cir., 184 F.2d 666.

5. § 156, Title 8 U.S.C.A.