UNITED STATES ex rel. SCALA DI FELICE v. SHAUGHNESSY, District Director of Immigration and Naturalization Service.

UNITED STATES ex rel. SCALA DI ANTONIO v. SHAUGHNESSY, District Director of Immigration and Naturalization Service.

United States District Court
S. D. New York.
Sept. 9, 1953.

Dominic M. Mello, Brooklyn, N. Y., for relators.

J. Edward Lumbard, U. S. Atty. for Southern District of New York, New York City, for respondent.

DIMOCK, District Judge.

Two writs of habeas corpus have been sued out on behalf of two aliens who were about to be deported to Italy. Since the facts and issues in both of them are practically the same I shall deal with them together.

Relators are natives and citizens of Italy who illegally entered the United States in March of 1953. They were apprehended shortly after their entry, and an appropriate hearing was had in which they were found deportable. Before their entry they had been legal residents of Canada for almost one year and they had been gainfully employed there during that period. They both claim Canada as their domicile and indeed the evidence is that their visit to the United States was intended to be only a temporary one. They are concededly deportable and in this proceeding they raise only the issues as to the propriety of their deportation to Italy instead of to Canada and the denial of their applications for the relief of voluntary departure by the administrative authorities.

At the hearing both relators chose Canada as the country to which they wished to be deported. Respondent points out in his return that inquiry has been made of the Canadian officials as to whether relators will be accepted into Canada and that our immigration authorities have been informed that they will not be accepted. It was then that relators were directed to be deported to Italy which it appears is willing to accept them. The Immigration and Naturalization Service submitted its file in the cases of these two relators to the court. There are in the file the two letters in which inquiry is made as to whether Canada will accept the relators. Both letters contain the endorsement that the relators are not admissible into Canada. I note, however, that both letters contain an error with respect to the information supplied the Canadian authorities concerning relators. Both letters show that relators had no prior residence in Canada, which is contrary to fact. At the immigration hearing had before this letter was sent out both relators testified that they had been legal residents of Canada for almost a year prior to their entry into the United States so that our immigration authorities were informed of these facts. Relators also assert that they have been assured by an attorney in Canada that they will be able to obtain permission from the Canadian government for their return to that country if their deportation is delayed to permit them to do so.

■ It has long been held that the lawfulness of the place of deportation fixed by the immigration officials can be raised by an alien by writ of habeas corpus. United States ex rel. Mensevich v. Tod, 264 U.S. 134, 44 S.Ct. 282, 68 L.Ed. 591; United States ex rel. Karamian v. Curran, 2 Cir., 16 F.2d 958; United States ex rel. Chow Yee Tung v. Harrison, 2 Cir., 143 F.2d 128. With the passage of the Internal Security Act of 1950 the rights of aliens about to be deported were further broadened. That statute provided in Section 23:

"That the deportation of aliens provided for in this Act and all other immigration laws of the United States shall be directed by the Attorney General to the country specified by the alien, if it is willing to accept him into its territory; otherwise such deportation shall be directed by the Attorney General within his discretion * *." 8 U.S.C. § 156.

Since then it has been held that aliens about to be deported have a right to exercise their choice as to the country to which they will be deported before deportation to a place designated by the Attorney General can take place. United States ex rel. Wiczynski v. Shaughnessy, 2 Cir., 185 F.2d 347, 349; United States ex rel. Harisiades v. Shaughnessy, 2 Cir., 187 F.2d 137, 142, affirmed 342 U.S. 580, 72 S.Ct. 512, 96 L. Ed. 586. The statutory provisions dealing with this question of the right of the alien to choose the place of deportation, however, have been changed by the Immigration and Nationality Act of 1952, 8 U.S.C.

A. § 1101 et seq. Section 243(a) of that Act provides, in part:

"The deportation of an alien in the United States provided for in this Act, or any other Act or treaty, shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States. No alien shall be permitted to make more than one such designation, nor shall any alien designate, as the place to which he wishes to be deported, any foreign territory contiguous to the United States or any island adjacent thereto or adjacent to the United States unless such alien is a native, citizen, subject, or national of, or had a residence in such designated foreign contiguous territory or adjacent island. If the government of the country designated by the alien fails finally to advise the Attorney General within three months following original inquiry whether that government will or will not accept such alien into its territory, such designation may thereafter be disregarded. Thereupon deportation of such alien shall be directed to any country of which such alien is a subject national, or citizen if such country is willing to accept him into its territory. If the government of such country fails finally to advise the Attorney General or the alien within three months following the date of original inquiry, or within such other period as the Attorney General shall deem reasonable under the circumstances in a particular case, whether that government will or will not accept such alien into its territory, then such deportation shall be directed by the Attorney General within his discretion * * *." 8 U.S.C. § 1253.

 Many changes have been introduced by the Act and it is plain on the face of the statute that Congress intended to circumscribe the right of aliens about to be deported in choosing the place of their deportation. Thus Congress has required that the choice be made promptly; the alien is given but one choice; that choice in the case of foreign territories contiguous to the United States or adjacent islands has been restricted; the choice can be disregarded if the government of the country designated does not respond within three months; and, finally, the Attorney General has been given the discretion to ignore the alien's choice if he concludes that deportation to the country chosen would be prejudicial to the interests of the United States. While it is abundantly clear that this right of choice granted the alien in the Internal Security Act of 1950 no longer exists without qualifications in view of the changes made by the Immigration and Nationality Act of 1952, there is nothing in that Act which does away with the right found to exist in the Wiczynski and Harisiades cases. Indeed there is only one provision in the new statute that permits the Attorney General to completely disregard a choice properly made. It is only when he concludes that deportation to the country chosen would be prejudicial to the interests of the United States that he may proceed immediately to deport the alien to another country. I would conclude, therefore, that the Attorney General may not completely ignore a properly made choice merely as a matter of whim or caprice. Of course, if the country chosen fails to respond to an inquiry within three months, the choice may be disregarded as the statute provides and besides it has always been held that where the appropriate country for deportation refuses to accept the alien another place of deportation may be designated. United States ex rel. Natali v. Day, 2 Cir., 45 F.2d 112, 113. See United States ex rel. Boraca v. Schlotfeldt, 7 Cir., 109 F.2d 106, 110; Gorcevich v. Zurbrick, 6 Cir., 48 F.2d 1054, 1055; Bukta v. Zurbrick, 6 Cir., 50 F.2d 593, 595.

 Since under the statute the Attorney General cannot completely and without reason ignore a proper choice of place of deportation, I think he is impliedly under some duty to help make deportation to that country possible or at

least not to hinder or impede deportation to that country. My view would be that a reasonably fair and adequate inquiry should be addressed by the Attorney General to the government of the country designated to determine whether that country will accept the alien. It seems to me that it would be inconsistent with the right afforded the alien by the statute if the Attorney General were free to proceed with deportation to another country without making any inquiry whatsoever or affording the alien a reasonable opportunity to obtain his admission by himself or if the Attorney General unreasonably refused to cooperate where necessary in assisting the alien in obtaining permission from the chosen country to enter or if the Attorney General could make an inquiry in which he did not fairly and adequately represent the alien's circumstances or his right to admission into the chosen country. On the other hand, I do not wish to imply that the obligation of the Attorney General is very broad. Of course he does not assume the role of counsel or agent for the alien and, for example, he is under no obligation to attack rulings by foreign administrative officials in foreign courts. United States ex rel. Gagliardo v. Karnuth, 2 Cir., 156 F. 2d 867. In any event, it is not necessary for me to make any broad ruling here for the immigration officials have in the case of these two relators undertaken to make inquiry of foreign officials as to whether they would accept these relators and, in making these inquiries, they have incorrectly stated a fact material to their admissibility. The Canadian officials in this case were informed that relators had never resided in Canada before whereas, in fact, they were legal residents of Canada and had been such for almost a year. If the true facts had been known to the Canadian officials, it is quite likely, I should think, that relators would have been accepted by that country and their choice would have been effectuated. It would seem strange to me that relators could in effect be deprived of the right granted them by the statute because our immigration officials incorrectly represented a fact material to their admission to the country of their choice. Implicit in the right granted them by the statute at the least is the right to have the facts concerning their admission correctly represented by the Attorney General when he inquires of the country which they have chosen whether or not they will be accepted. That has not been done in this case and therefore I think that relators cannot yet be properly deported to Italy. Having come to this conclusion, it is unnecessary for me to decide whether or not relators are correct in contending that they should be afforded additional time to arrange on their own for their admission to Canada.

■ There remains but the question as to the propriety of the administrative denial of relators' application for the relief of voluntary departure. The administrative record shows that their applications were duly considered and decision reached on an overall evaluation of the circumstances shown. Under those circumstances, the administrative decision cannot be reviewed. See United States ex rel. James v. Shaughnessy, 2 Cir., 202 F.2d 519.

■ Since relators are clearly deportable, they cannot be unconditionally released. United States ex rel. Wiczynski v. Shaughnessy, 2 Cir., 185 F.2d 347, 349, supra. The procedure indicated by the court of appeals in United States ex rel. Harisiades v. Shaughnessy, 2 Cir., 187 F. 2d 137, 142, affirmed 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586, supra, appears to be that the writ should be held in abeyance pending action by the Attorney General in conformity with the court's opinion. The parties may submit orders suggesting the appropriate procedure for dealing with the situation in this case.