Settle an order accordingly.

**HARISIADES v. SHAUGHNESSY, Acting District Director of Immigration and Naturalization at Port of New York.**

United States District Court
S. D. New York.
April 4, 1950.

Carol King, Isidore Englander, New York City (Blanch Freedman, New York City, of counsel), attorneys. for petitioner.

Irving H. Saypol, United States Attorney for the Southern District of New York, New York City (Clarke S. Ryan, Assistant United States Attorney, Lester Friedman, New York City, of counsel), attorney for respondent.

LEIBELL, District Judge.

The petitioner herein sued out a writ of habeas corpus on July 1, 1949 for a review of certain proceedings of the Bureau of Immigration and Naturalization which had resulted in the issuance of a warrant of deportation on December 16, 1948. Argument on the writ was had before me on July 19, 1948. Final briefs were filed thereon in September, 1949. The writ was dismissed for reasons stated in an opinion of this Court filed February 9, 1950, 90 F. Supp. 397. An order on the decision was entered on February 20, 1950. On the same day the petitioner filed a notice of appeal to

the Court of Appeals, Second Circuit, and petitioner was admitted to bail by this Court pending the determination of the appeal.

Also on February 20, 1950, the Supreme Court of the United States rendered an opinion in Wong Yang Sung v. McGrath, 70 S.Ct. 445, 455, holding that the Administrative Procedure Act of June 11, 1946, 5 U.S.C.A. § 1001 et seq., was applicable to deportation proceedings and that such proceedings "must conform to the requirements of the Administrative Procedure Act if resulting orders are to have validity".[1]

Thereafter, on March 2, 1950 the petitioner through an order to show cause, moved for permission to amend nunc pro tunc the original petition for a writ of habeas corpus by adding sub-paragraphs C, D and E to paragraph 15;[2] to reargue the writ; and to have the writ sustained. The grounds asserted in support of the motion were that the deportation proceeding was conducted by a Presiding Inspector who was not appointed in accordance with Section 11 of the Administrative Procedure Act and who conducted the proceedings as an examining inspector, performing mixed prosecutive and judicial or hearing functions, in violation of Section 5 of the Administrative Procedure Act.[3] The Government opposed the motion contending

---

1. It had theretofore been held by the Court of Appeals of .this Circuit that the Administrative Procedure Act did not apply to deportation proceedings. Azzollini v. Watkins, 2 Cir., 1949, 172 F.2d 897; United States ex rel. Lee Wo Shing v. Watkins, 2 Cir., 1949, 175 F.2d 194.

2. "C. The reopened hearing on the new lodged charges was not conducted in accordance with the requirements of the Administrative Procedure Act, all in violation of law in that the official presiding at such hearing on such charges was not appointed in accordance with Section 11 of the Administrative Procedure Act and in addition had previously had prosecutive functions in the same proceeding and was at all times subordinate to and under the control of the Commissioner of Immigration and Naturalization, who initiated and pressed the charges against the petitioner.

"D. The original hearings on October 15, 1946 and January 20–31, 1947 were conducted by a single inspector, Gilbert

Zimmerman, acting both as presiding and examining inspector so that the function of judge and prosecutor were embodied in one and the same individual.

"E. The said inspector, Gilbert Zimmerman, not only at the original hearings in 1946 and 1947, but more particularly at the reopened hearings in 1948, asked the respondent and particularly his witness a multitude of questions and even interrupted and interfered with answers given, and took upon himself thereby the functions of a prosecutor rather than a judge."

3. Section 5 of the Administrative Procedure Act, 5 U.S.C.A. § 1004, provides in subdivision (c) thereof: "SEPARATION OF FUNCTIONS.—The same officers who preside at the reception of evidence pursuant to section 7 shall make the recommended decision or initial decision required by section 8 except where such officers become unavailable to the agency. Save to the extent required for the disposition of ex parte matters as author-

that the filing of the notice of appeal barred the District Court from considering the motion and that the deportation proceeding in this case was initiated or commenced prior to the effective dates of the allegedly applicable sections of the Administrative Procedure Act,[4] and accordingly was specifically excepted from the provisions of that Act.

The petitioner brought on a second motion, on March 28, 1950, for an order permitting the relator to withdraw the notice of appeal filed February 20, 1950, and thus remove any jurisdictional question. The Government opposes that motion on the grounds that the District Court is without jurisdiction to entertain it; that the application to withdraw the notice of appeal is improper; and that the whole issue should be brought on by a petition for a new writ of habeas corpus.

The earlier rulings [5] that the filing of a notice of appeal deprived the District Court of authority to proceed any further in the matter, except in aid of the appeal or under Rule 60(a) relating to clerical mistakes, until it has received the mandate of the appellate court, have been modified by an amendment to Rule 73(a), F.R.C.P.

which provides:—"If an appeal has not been docketed, the parties, with the approval of the district court, may dismiss the appeal by stipulation filed in that court, or that court may dismiss the appeal upon motion and notice by the appellant." No appeal has been "docketed" and an application for leave to dismiss having been made, on notice, by the appellant, this Court has jurisdiction to entertain it.

The situation here presented is this:— After the February 9, 1950 decision of this Court in the habeas corpus proceedings, and before the record on appeal was docketed, in fact on the same day the notice of appeal was filed, a decision of the Supreme Court supervened which required an examination of its applicability to the facts in the instant case. Wong Yang Sung v. McGrath, 70 S.Ct. 445. In such circumstances it is proper that the United States Court of Appeals for this Circuit have a complete record available, so that it may review the matter in its entirety rather than piecemeal. A recent case in this Court presented a similar problem. In American-Hawaiian SS Co. v. United States (The Alaskan) D.C.S.D.N.Y., 85 F.Supp. 815, when after an appeal was docketed, the

ized by law, no such officer shall consult any person or party on any fact in issue unless upon notice and opportunity for all parties to participate; nor shall such officer be responsible to or subject to the supervision or direction of any officer, employee, or agent engaged in the performance of investigative or prosecuting functions for any agency. No officer, employee, or agent engaged in the performance of investigative or prosecuting functions for any agency in any case shall, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 8 except as witness or counsel in public proceedings. * *"

Section 11, 5 U.S.C.A. § 1010, provides that competent examiners shall be appointed by and for each agency who "shall be assigned to cases in rotation so far as practicable and shall perform no duties inconsistent with their duties and responsibilities as examiners. Examiners shall be removable by the agency in which they are employed only for good cause established and determined by the Civil Service Commission (hereinafter

called the Commission) after opportunity for hearing and upon the record thereof. Examiners shall receive compensation prescribed by the Commission independently of agency recommendations or ratings and in accordance with the Classification Act of 1923, as amended, * * *"

4. Section 12 of the Act, 5 U.S.C.A. § 1011, provides:—"This Act shall take effect three months after its approval except that Sections 7 and 8 shall take effect six months after such approval, the requirement of the selection of examiners pursuant to section 11 shall not become effective until one year after such approval, and no procedural requirement shall be mandatory as to any agency proceeding initiated prior to the effective date of such requirement." The Act was approved June 11, 1946.

5. Miller v. United States, 7 Cir., 1940, 114 F.2d 267; Fiske v. Wallace, 8 Cir., 1940, 115 F.2d 1003, certiorari denied 314 U.S. 663, 62 S.Ct. 123, 86 L.Ed. 531; Notes of Advisory Committee on Amendments to the Federal Rules of Civil Procedure, Rule 73(a), 28 U.S.C.A.

Court of Appeals denied a motion for a remand on the grounds of a supervening Supreme Court decision, but granted the movant leave to make application to the District Court to consider the merits of the application. A similar approach to the problem in the case at bar seems proper.

In order to determine whether the petitioner's motion to withdraw the appeal should be granted, the Court will first consider the merits of the original application for leave to amend the petition for the writ of habeas corpus.

A brief chronology of the various steps in the deportation proceeding and a resume of the charges is necessary to highlight the points advanced by petitioner. On April 12, 1930 a warrant of arrest of the alien, Peter Harisiades, was issued by an Assistant to the Secretary of Labor on the grounds that the petitioner had been found in the United States in violation of the Act of October 16, 1918, as amended by the Act of June 5, 1920, 8 U.S.C.A. § 137, for the reason: "That he is a member of or affiliated with an organization, association, society or group that believes in, advises, advocates, or teaches the overthrow by force or violence of the Government of the United States or of all forms of law." [6]

The following is quoted from my opinion dated February 9, 1950, 90 F.Supp. 399: "A search was made for him [the alien] in several states, but the 1930 warrant was not served. Meanwhile he had assumed various aliases. In 1937 he married an American citizen. He has two children. In 1943 his alien registration record was checked and later his location was ascertained; but it was not until May 2, 1946 that the warrant of deportation was served and he was taken into custody."

"On the same day, the relator was notified in writing that he had been served with and furnished a copy of the warrant of arrest and that he has been released in order to afford him an opportunity to arrange for his defense at a subsequent hearing which would be given to determine why he should not be deported from the United States. In this communication he was also advised of his right to counsel and the

6. In effect at that time was Section 2 of the Act of 1918, 40 Stat. 1012, amended 1920, 41 Stat. 1008, providing for deportation of * * * any alien who, at any time after entering the United States, is found to have been at the time of entry, or to have become thereafter, a member of any one of the classes of aliens enumerated in section one * * ". Section 1 of that Act enumerated in subdivisions (c), (d) and (e) the following classes: "(c) Aliens who believe in, advise, advocate, or teach, or who are members of or affiliated with any organization, association, society, or group, that believes in, advises, advocates, or teaches: (1) the overthrow by force or violence of the Government of the United States or of all forms of law, or (2) the duty, necessity or propriety of the unlawful assaulting or killing of any officer or officers (either of specific individuals or of officers generally) of the Government of the United States or of any other organized government, because of his or their official character, or (3) the unlawful damage, injury or destruction of property, or (4) sabotage;

"(d) Aliens who write, publish, or cause to be written or published, or who knowingly circulate, distribute, print, or display, or knowingly cause to be circulated, distributed, printed, published, or displayed, or who knowingly have in their possession for the purpose of circulation, distribution, publication, or display, any written or printed matter, advising, advocating, or teaching, opposition to all organized government, or advising, advocating or teaching: (1) the overthrow by force or violence of the Government of the United States or of all forms of law, or (2) the duty, necessity or propriety of the unlawful assaulting or killing of any officer or officers (either of specific individuals or of officers generally) of the Government of the United States or of any other organized government, or (3) the unlawful damage, injury or destruction of property, or (4) sabotage;

"(e) Aliens who are members of or affiliated with any organization, association, society, or group, that writes, circulates, distributes, prints, publishes, or displays, or causes to be written, circulated, distributed, printed, published, or displayed, or that has in its possession for the purpose of circulation, distribution, publication, issue, or display, any written or printed matter of the character described in subdivision (d)."

various rights and privileges were fully explained." [6A] On the same date a formal notice of appearance in the deportation proceeding was filed by Carol King, the present attorney for the alien. On August 28, 1946 notification of a hearing on the warrant of arrest, set for September 12, 1946, was sent to the relator. Two adjournments of the hearing, to September 25, 1946 and October 15, 1946, were granted at the request of the petitioner's attorney and the hearing was finally opened on October 15, 1946, before a Presiding Inspector, Mr. Gilbert Zimmerman, who also conducted the examination of the alien. On that day in the course of the hearing the Presiding Inspector stated:—

"Q. You are informed that in addition to the charge contained in the Warrant of Arrest, the following additional charges are now lodged against you.

"1) That you are in the United States in violation of the Act of October 16, 1918, as amended, in that you have been found to have been after entry a member of the following class set forth in Section 1 of said Act: an alien who believes in, advises, advocates, or teaches the overthrow by force or violence of the government of the United States;

"2) That you are in the United States in violation of the Act of October 16, 1918, as amended, in that you have been found to have been after entry a member of the following class set forth in Section 1 of said Act: an alien who is a member of an organization, association, society, or group that believes in, advises, advocates, or teaches the overthrow by force or violence of the government of the United States;

"3) That you are in the United States in violation of the Act of October 16, 1918, as amended, in that you have been found to have been after entry a member of the following class set forth in Section 1 of said Act: an alien who is affiliated with an organization, association, society, or group that believes in, advises, advocates, or teaches the overthrow by force or vio-

lence of the government of the United States.

Do you understand the nature of these additional charges?

A. It seems to me they are the same charges as the first one, and I repeat again that the Communist Party does not and never did advocate the violent overthrow of the United States government. The same thing holds true as far as my personal beliefs are concerned." [pp. 40–41]

On March 11, 1947 the Presiding Inspector made a report in which he stated:—

"Since respondent's Communist membership and affiliation had terminated, so far as the evidence in the record establishes, approximately seven years before the warrant of arrest was served upon him in 1946, it is evident that the charge in the warrant of arrest of present membership in, or affiliation with, a proscribed organization is not sustained by the evidence.

"However, upon the basis of respondent's testimony and the other evidence in the record which is hereinafter discussed, three additional charges under the Act of October 16, 1918, as currently amended, were lodged against respondent (p. 41) These additional charges, in substance, charge respondent with:

"(1) Past belief in, advising, advocating, or teaching the overthrow by force or violence of the Government of the United States;

"(2) Past membership in an organization that believed in, advised, advocated, or taught the overthrow by force or violence of the Government of the United States; and

"(3) Past affiliation with an organization that has believed in, advised, advocated, or taught the overthrow by force or violence of the Government of the United States." [pp. 3 & 4]

In that same report of March 11, 1947, the Presiding Inspector made certain proposed findings of fact and conclusions of law, among which were the following:—

[6A] Affidavit of L. Friedman, Atorney, Immigration and Naturalization Service, Sworn to March 17, 1950. Counsel for petitioner concedes the accuracy of the averments in this affidavit.

"(4) That from 1925 to 1939 respondent was a member in good standing of the Communist Party in the United States, an organization which, during the period from 1928 to 1939, believed in, advised and advocated the overthrow by force and violence of the Government of the United States; [p. 63]

\* \* \* \* \* \*

"(2) That under the Act of October 16, 1918, as amended, respondent is subject to deportation, in that he is found to have been, after entry, a member of the following class set forth in Section 1 of said Act: An alien who is a member of an organization, association, society, or group that believes in, advises, advocates or teaches the overthrow by force or violence of the Government of the United States; [p. 63]

\* \* \* \* \* \*

"(4) That respondent is not subject to deportation on the ground that he has been found in the United States in violation of the Act of October 16, 1918, as amended by the Act of June 5, 1920, in that he is a member of, or affiliated with an organization, association, society, or group that believes in, advises, advocates or teaches the overthrow by force or violence of the Government of the United States or of all forms of law; [p. 64]"

Thereafter, on August 5, 1947 the Commissioner of Immigration and Naturalization ordered the hearing reopened for the authentication of certain documents, the reception of additional evidence, and the lodging of additional charges. This hearing was set for September 22, 1947 and, after adjournment requested by counsel for petitioner, was held on February 18–19, 1948. Two inspectors of the Immigration Service conducted this hearing, a presiding inspector, Mr. Gilbert Zimmerman, and an examining inspector, Mr. Maurice A. Roberts. Prior to this hearing, in an affidavit verified September 17, 1947, counsel for the petitioner objected to any change in personnel (allegedly a new presiding inspector and also an examining inspector were to be named) and noted that the petitioner had consented to have Mr. Zimmerman act as both a presiding inspector and an examining inspector:—"Respondent [Harisiades] believes the present change in the personnel is due to the fact that the original inspector [Gilbert Zimmerman] in this case, whom he consented to have act both as presiding and examining inspector, was not sufficiently prejudiced against the respondent to meet the present prevailing views of the Department of Justice and for that reason has been removed from this case."

Petitioner's counsel, in her brief on the motion for leave to amend the petition for the writ, states:—

"We do not question the personal integrity of the inspector [Gilbert Zimmerman]. Nevertheless, it is clear that Section 5(c) of the Administrative Procedure Act has been violated where, as here, the same inspector was presiding and examining inspector at the deportation hearing, and where he was clearly responsible to the Commissioner of Immigration and Naturalization (5 Fed.Reg. 2108; Sec. 6 of Reorganization Plan III, and Sec. 1 of Reorganization Plan V, both effective June 1940; 5 U.S.C.A. § 133(t), (v), and (x)). The decision here made must accordingly be reversed upon the authority of the Sung decision."

The first question to be considered is whether the deportation proceeding was "initiated" prior to the effective date of Sections 7, 8 and 11 of the Administrative Procedure Act which concern procedural requirements. The deportation proceeding was initiated even before the Administrative Procedure Act became a law by presidential approval on June 11, 1946. If the date the warrant was issued (April 12, 1930) is the date on which the deportation proceeding was started (United States ex rel. Trinler v. Carusi, 3 Cir., 166 F.2d 457, footnote 5 on page 459) then the deportation proceeding was initiated years before the enactment of the Administrative Procedure Act. If the deportation proceeding was initiated when the warrant of arrest was executed or served, then this deportation proceeding was initiated May 2, 1946, about forty days before the Administrative Procedure Act became law. That there was a deportation proceeding pending on May 2, 1946 is further evidenced by the

notice of appearance therein which petitioner's attorney filed on that date.

■ The attorney now argues that the proceeding was not initiated until the day the first hearing was held, October 16, 1946, and that Section 5 of the Act went into effect September 11, 1946. As hereinabove stated the notice for a hearing was sent out August 25, 1946. The hearing was to have been held September 12, 1946. The date of the hearing was twice postponed at the request of petitioner's counsel and the first hearing was not held until October 15, 1946. There is no merit to the contention that the deportation proceeding was not initiated until October 15, 1946.

Petitioner contends that "what is of paramount significance is that the charge in the 1930 warrant was found not to have been sustained and that the deportation charges now under review were certainly not lodged before October 15, 1946, well after Section 5 of the Administrative Procedure Act went into effect". The additional charges lodged October 15, 1946 have been quoted hereinabove. In effect petitioner argues that those charges constituted the initiation of a new deportation proceeding.

The purpose of the additional charges, Nos. 2 and 3, was to recast the original charge in the language of the June, 1940 amendment to Section 137 of Title 8, U.S. C.A., in relation to the deportation of aliens. A ruling of the Supreme Court in Kessler, District Director of Immigration and Naturalization v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 701, 83 L.Ed. 1082, decided April 17, 1939, had held in effect that an alien could be ordered deported only for present membership (at the time of his arrest), but not for past membership at some time after entry if he had ceased to be a member at the time of his arrest. The Congress in June 1940 amended the statute,

T. 8, U.S.C.A. § 137, so that it specifically applied to membership in the proscribed type of organization at any time after entry, thus giving effect to the views expressed in the dissenting opinion in the Kessler case.[7] The warrant of arrest in the case at bar had been drawn in April 1930 and the charge in the warrant was stated in the language of the statute as then in effect. The additional charges lodged against the alien on October 15, 1946, used the language of the statute as amended in June 1940.

The alien came to the United States March 7, 1916 when he was 13 years old. That was his date of entry. The warrant of arrest spoke as of its own date, April 12, 1930. The additional charges Nos. 2 and 3 allege that the alien "after entry" was a member of and affiliated with an organization advocating the overthrow of the government of the United States by force or violence. The proof showed, in fact it was admitted, that the alien had been a member of the Communist Party in the United States from 1925 to October 1939. Harisiades himself recognized that there was nothing new in these additional charges lodged October 15, 1946, because he stated on the record at the time, "It seems to me they are the same charges as the first one".

The following quotation from my opinion of February 9, 1950, continues the chronological narrative:—

"Hearings were held before a presiding inspector of the Bureau of Immigration and Naturalization, on October 15, 1946 and on January 30–31, 1947. On March 11, 1947 the Presiding Inspector made a report, covering 65 pages, and recommended petitioner's deportation to Greece. The report contained proposed Findings of Fact and Conclusions of Law as to deportability. The record was forwarded to the Central

---

7. Associate Justices McReynolds and Butler dissented in the Kessler case, in an opinion by Justice McReynolds in which he stated:—"The construction of the statute adopted by the Court seems both unwarranted and unfortunate. If by the simple process of resigning or getting expelled from a proscribed organization an alien may thereby instantly purge himself after months or years of mischievous activities, hoped for protection against such conduct will disappear. Escape from the consequences of deliberate violations of our hospitality should not become quite so facile."

Office and on May 14, 1947 the attorney for Harisiades filed exceptions to the report. On August 5, 1947 the Commissioner ordered that the hearing be reopened for the proper authentication of documents already introduced, for the reception of additional evidence, and for the lodging of certain additional charges."

On September 3, 1947 the attorney for the alien was notified by letter that the hearing was being reopened and the two further charges were set forth in the letter verbatim. The charges were that the alien was deportable, in that:—

"(4) The Act of October 16, 1918, as amended, in that he is found to have been after entry, a member of the following class set forth in Section I of said Act: An alien who is a member of and affiliated with an organization, association, society, and group that advises, advocates, and teaches the overthrow by force and violence of the Government of the United States.

"(5) The Act of October 16, 1918, as amended, in that he is found to have been, after entry, a member of the following class set forth in Section I of said Act: An alien who is a member of and affiliated with an organization, association, society, and group that writes, circulates, distributes, prints, publishes, and displays, and causes to be written, circulated, distributed, printed, published and displayed, and that has in its possession for the purpose of circulation, distribution, publication, issue, and display, written and printed matter advising, advocating, and teaching the overthrow by force and violence of the Government of the United States.".

After protests on the part of the alien's attorney the reopened hearing finally got under way on February 18, 1948. Mr. Zimmerman continued as the presiding inspector as the alien's attorney requested and a Mr. Roberts acted as the examining inspector.

As to these two additional charges (Nos. 4 and 5) the first of them (No. 4) was a combination of charges Nos. 2 and 3 which were lodged at the hearing of October 15, 1946, and are based on subdivision (c) of the statute as amended in June, 1940, 8 U.S.C.A. § 137(c). They contained nothing new. Charge No. 5 was new to the extent that it charged that the proscribed organization (the Communist Party) of which the alien was a member and to which he was affiliated, distributed and circulated written and printed matter advocating the overthrow of the government of the United States by force and violence. It appears that charge No. 5 was suggested by certain exhibits and proof that had been received at the original hearing in October 1946 and January 1947. The distribution of subversive literature by the proscribed organization is included in subdivision (e) of the statute as amended in June, 1940, 8 U.S.C.A. § 137(e).

The reopened hearings were held on February 18–19 and March 9–10, 1948. On June 24, 1948 the presiding inspector, Gilbert Zimmerman, made a report of 300 pages, with proposed findings and conclusions. The case then went to the Commissioner's office where the Chief Examiner reviewed it and made a report dated December 16, 1948. He concluded that the government had established all of the lodged charges and he submitted Findings of Fact and Conclusions of Law and recommended that Harisiades be deported. He found that at least from 1925 to October 1939 Harisiades had been an active member/affiliate in good standing of the Communist Party of the United States and that during that period the Communist Party advocated the overthrow of the government of the United States and distributed printed matter so advocating. He also found that the alien had been affiliated with the Communist International during that same period 1925–1939 and that the Communist International advocated the overthrow of the government of the United States by force and violence. He further found that the alien during that period believed in the overthrow of the government of the United States by force and violence and "continues to hold the same views thereon since October 1939". He also found that during the 1925–1939 period the Communist Party of the United States was affiliated with the

Communist International. The presiding inspector's conclusions of law were based on the deportation statute, T. 5 U.S.C.A. § 137, and he held the alien deportable because of past membership in the Communist Party, but he made a separate conclusion of law that the alien was not deportable on any ground of present membership.

The Commissioner approved and adopted the report, findings and conclusions of the Chief Examiner and endorsed them "so ordered" on December 16, 1948 and a warrant of deportation was thereupon issued. The warrant of deportation embodied the charges the Chief Examiner and the Commissioner had found sustained by ample substantial evidence. The alien appealed to the Board of Immigration Appeals. The Board of Appeals filed its opinion on May 13, 1949.

The Board of Appeals found "that during the period of respondent's membership in the Communist Party of the United States of America (1925–1939) it advocated the overthrow of the government of the United States by force and violence and it distributed printed matter which so advocated". The Board held that the record did not establish "that the respondent personally believed in or advocated the overthrow of the government of the United States by force and violence" and that since he admitted *membership* in the Communist Party of the United States the grounds of deportation based on *affiliation* were superfluous.

The Board of Immigration Appeals concluded:—"The order of deportation will be affirmed on the grounds that after entry into the United States the respondent became a member of an organization which advocated the overthrow by force and violence of the Government of the United States, and which distributed printed matter that so advocated."

■ It appears, therefore, that the charge in the original warrant of arrest that (as of the date of the warrant April 12, 1930) Harisiades was a member of an organization which advocated the overthrow by force and violence of the Government of the United States is embraced (a) within the proposed findings and conclusions of the presiding inspector and the chief examiner, (b) within the findings and conclusions of the Assistant Commissioner, (c) within the language of the order of deportation of the Acting Commissioner of December 16, 1948, and (d) within the grounds on which the order of deportation was affirmed by the Board of Immigration Appeals on May 18, 1949 when the Boards dismissed the alien's appeal. But, as hereinabove stated, there is and has been only one deportation proceeding brought against this alien, Peter Harisiades. It was initiated either on the date the warrant was issued, April 12, 1930, or the date on which it was served, May 2, 1946. Both these dates were prior to the enactment of The Administrative Procedure Act, June 11, 1946. The additional charges lodged October 15, 1946 were in substance the same as the charge stated in the original warrant of arrest. The first (No. 4) of the second lot of two charges (Nos. 4 and 5) lodged August 7 or September 3, 1947, prior to the reopened hearings was a combination of charges Nos. 2 and 3 of October 15, 1946. Charge No. 5 was new but what it charged was membership in an organization which distributed literature which advocated the overthrow of the government of the United States. The distribution of literature of that type would be proof of the advocacy of the overthrow of the government by force and violence. Hence it was closely linked to the other charges Nos. 2, 3 and 4 and was of the same substance.

The motion for leave to amend the petition for a writ of habeas corpus is accordingly denied on the merits. In view of that determination, the motion to withdraw the notice of appeal is also denied. Settle an order accordingly on two days' notice.