**UNITED STATES ex rel. HARISIADES v. SHAUGHNESSY, District Director of Immigration and Naturalization.**

No. 55, Docket 21754.

United States Court of Appeals Second Circuit.

Argued Jan. 4, 1951.

Decided Feb. 6, 1951.

Carol King and Isidor Englander, New York City (William B. Cherevas and Blanch Freedman, New York City, of counsel), for appellant.

Irving H. Saypol, U. S. Atty. (Henry L. Glenn, Asst. U. S. Atty., Louis Steinberg, District Counsel, New York City, and Solomon Isenstein, Washington, D. C., and Max Blau, New York City, United States Department of Justice, Immigration and Naturalization Service, of counsel), for appellee.

Ira Gollobin, New York City, for American Committee for Protection of Foreign Born, amicus curiae.

Before L. HAND, Chief Judge, and SWAN and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This appeal brings before us the dismissal of a writ of habeas corpus in a deportation proceeding. The alien is a Greek who came to the United States in 1916 when a boy of thirteen years. He has lived here ever since, has married a United States citizen and is the father of two children who are still minors. On May 20, 1949 he was taken into custody for deportation to Greece. He sued out a writ of habeas corpus which came on for hearing before Judge Leibell who dismissed the writ, with an opinion reported in D.C., 90 F.Supp. 397. The order of dismissal was entered February 20, 1950, and on the same day the relator filed notice of appeal. Also on February 20, 1950 the Supreme Court handed down its opinion in Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, holding that the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., is applicable to deportation proceedings. In reliance on this decision the relator moved for reargument and for leave to amend, *nunc pro tunc,* his petition for the writ. The motion was opposed on

the ground that his appeal had divested the District Court of jurisdiction. The relator then moved for leave to withdraw his notice of appeal. Both motions were heard by Judge Leibell and were denied in an opinion reported in D.C., 90 F.Supp. 431. This order was also appealed and the two appeals have been consolidated. Pending his appeal the relator is enlarged on bail.

The first question concerns the regularity of the administrative hearings in view of the Administrative Procedure Act, which became effective September 11, 1946.[1] The hearings began October 15, 1946 before Inspector Zimmerman. Concededly he was not qualified if the Act was applicable, nor was the inspector who acted as examiner in the reopened hearings in 1948 appointed in accordance with section 11 of the Act. The appellee contends that the Act was inapplicable by its own terms since section 12 provides " * * * no procedural requirement shall be mandatory as to any agency proceeding initiated prior to the effective date of such requirement."

The problem breaks down into two questions: (1) Are the provisions of the Act which specify the qualification of the presiding inspector and the method of appointing examiners "procedural requirements," and (2) Was the proceeding "initiated" before the effective date of the Act. We think it clear that the legislative history requires an affirmative answer to both questions. The Senate and House Committee reports indicate that no provision of the Act was to apply to any proceeding commenced before the Act became effective.[2] Essentially the issue is when was the proceeding which resulted in the deportation order "initiated."

A warrant for the arrest of the alien was issued by the Immigration Service on April 12, 1930, but it was not served upon him until May 2, 1946. It charged him with being here in violation of law on the ground of membership in an organization that advocates the overthrow of the Government by force or violence.[3] When the warrant was issued, the charge was valid because the alien was then a member of the Communist Party of the United States. He joined the party in 1925 and continued as a member until 1939, when he was dropped because it became the policy of the party not to permit aliens to be members. Before the warrant was served the Supreme Court had held that only present membership was ground for deportation under the then existing statute.[4] But in 1940 the statute was amended to make past membership a cause for deportation.[5] Accordingly at the October 1946 hearings and also at the reopened hearings in 1948 additional charg-

1. 60 Stat. 237, 244, 5 U.S.C.A. § 1001 et seq.

2. An interim print of the Senate Committee on the Judiciary in June 1945 explained the effect of the final clause of section 12 as follows: "It should be noted, moreover, that * * * the proposal is not to have retroactive effect as to proceedings 'initiated * * * prior to the effective date' of any requirement." Sen.Doc.No.248, 79th Cong., 2d Sess. 43 (1946). The final report of the House Committee on the Judiciary contained a "diagram synopsis" of the Act which stated that "The Act is not to apply to proceedings previously begun." H.R.Rep.1980, 79th Cong., 2d Sess. 28 (1946). Explaining the bill on the floor of the House, Representative Walter said that "No requirement of the bill is mandatory as to any agency proceeding initiated prior to the effective date of such requirement." 92 Cong.Rec. 5655 (1946). Senator McCarran, who explained the bill on the Senate Floor, merely quoted the words of the final clause of section 12; but in doing so he omitted the word "procedural" entirely, thus indicating that he attached no significance to it. 92 Cong.Rec. 2159 (1946). The word was also omitted in summaries appearing in the final reports of the Senate and House Committees. See Sen.Rep. 752, 79th Cong. 1st Sess. 29 (1945); H.R.Rep.1980, 79th Cong., 2d Sess. 47 (1946).

3. Section 2 of the Act of October 16, 1918, 40 Stat. 1012, as amended by the Act of June 5, 1920, 41 Stat. 1008, made membership in such an organization cause for deportation.

4. Kessler v. Strecker, 1939, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082.

5. Act of June 28, 1940, 54 Stat. 670, 673, 8 U.S.C.A. § 137.

es based on the alien's past membership in the Communist Party were lodged, as authorized by the Regulations.[6] These charges were sustained, while the original charge of present membership was not sustained. May it be said that the hearing on the amended charges was "initiated" before they were lodged? We agree with Judge Leibell's decision that it was. A helpful analogy may be found in the Federal Rules of Civil Procedure, 28 U.S.C.A., even though they are not applicable to administrative hearings. Rule 15(c) provides that when the claim asserted in an amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Applying the analogy to the present facts, the 1946 charge of former membership arose out of the same "conduct"—membership from 1925 to 1939—charged as the ground for deportation in the 1930 warrant of arrest; the amended charge therefore would relate back to the date of the original charge. Whether that date be deemed the date of the 1930 warrant or the date of its service, May 2, 1946, is immaterial since either antedates the Administrative Procedure Act.[7] The issue has now become of little, if any, significance because of the enactment on September 27, 1950 of P.L. 843, 81st Cong. 2d Sess., 64 Stat. 1048, which provides: "Proceedings under law relating to the exclusion or expulsion of aliens shall hereafter be without regard to the provisions of sections 5, 7, and 8 of the Administrative Procedure Act (5 U.S.C. 1004, 1006, 1007)."

Whether this would make the original hearings lawful, had they not been "initiated" before September 11, 1946 we need not decide. At the least it means that any new hearing could be presided over by an officer having no different qualifications than did Inspector Zimmerman.

The appellant next contends that the administrative determination should be reversed because the evidence is insufficient to support it. Since the appellant admits that he is an alien and was a member of the Communist Party of the United States from 1925 to 1939, this attack is only upon the administrative findings that the Communist Party advocated the overthrow of the Government by force and distributed printed matter so advocating. He argues that the Government rested its case upon the documentary evidence and that the documents do not support the findings. The record does not bear him out. Three witnesses besides the alien gave oral testimony. The presiding inspector analyzed their testimony, discredited the alien and Schneiderman, and concluded that the oral testimony "overwhelmingly supports the conclusions that have been reached on the basis of direct analysis of the writings of Lenin and Stalin, and the official utterances of the Communist International and the Communist Party of the U. S. A."[8] The opinion of the Assistant Commissioner of Immigration and Naturalization also notes that the oral testimony "corroborates" the documentary evidence.[9] Plainly on this record the administrative findings of the advocacy of overthrow of the Government by violence and of the distribution of documents so advocating are not so arbitrary as to require judicial reversal in a habeas corpus proceeding. Even if the court might itself have drawn different inference, though we should not, that

6. 8 C.F.R. 150.6(1).

7. No precise authority has been found. Under statutes authorizing deportation within a specified number of years after the alien's entry, the courts have treated the proceeding as commenced either by the issuance of the warrant of arrest or at the latest by the service of the warrant. Raftery ex rel. Giacomazzi v. Tillinghast, 1 Cir., 63 F.2d 97; United States ex rel. Danikas v. Day, 2 Cir., 20 F.2d 733. See Tillinghast v. Cresswell ex rel. Di Pierro, 1 Cir., 54 F.2d 459, 460, certiorari denied on technical grounds, 286 U.S. 560, 52 S.Ct. 648, 76 L.Ed. 1293; United States ex rel. Trinler v. Carusi, 3 Cir., 166 F.2d 457, 459 n. 5. See also Carusi, "The Federal Administrative Procedure Act and The Immigration and Naturalization Service," in Warren, Federal Administrative Procedure Act and The Administrative Agencies, 294-5 (1947).

8. Transcript of Record, p. 801.

9. Transcript of Record, p. 842.

would not suffice to establish that the hearing was unfair. Upon a collateral review in habeas corpus it is enough that there was some evidence from which the conclusion of the administrative tribunal could be deduced and that no error was committed so flagrant as to convince the court of the essential unfairness of the trial.[10] Moreover even if the evidence of the proscribed advocacy were deemed insufficient, the alien would now be deportable under section 22 of the Internal Security Act of 1950 [11] by virtue merely of his past membership in the Communist Party.

█ Finally the appellant urges that to deport an alien, who has resided here so long, merely because he belonged to the Communist Party twelve years ago violates constitutional prohibitions. The appellee replies (1) that the power of Congress to deport aliens at any time and for any reason it deems in the public interest is absolute; and (2) that even if the power to deport is not unlimited, its exercise in the case at bar does not contravene any provision of the Constitution. It must be conceded that a most persuasive argument both on principle and on authority has been advanced in support of the absolute power of Congress. A sovereign may exclude aliens altogether or may admit them on such terms as it chooses to impose. While an alien is allowed to remain here he is accorded certain constitutional protections but his license to remain is revocable at the sovereign's will; thereafter with respect to deportation he is entitled only to "procedural due process," that is, that he be given notice of the hearing and opportunity to show that he does not come within the classification of aliens whose deportation Congress has directed.[12] So far as we can discover none of the later decisions of the Supreme Court casts any doubt upon the continued potency of the earlier cases on this subject.

█ Nevertheless it is unnecessary to rest decision upon the principle that Congress has absolute and unqualified power with respect to the deportation of aliens. Even if the power be not absolutely unlimited and if we assume that a statute would be invalid which directed deportation for some cause having no rational relation to the public welfare, as for example, that all blue-eyed aliens be deported, this is not such a case. The statute here involved is directed against those who have at any time confederated to overthrow the Government by force, and we hold that its present application is not unconstitutional. No society need continue to harbor aliens who have joined a group who propose to destroy the society itself. This appellant joined the group voluntarily and at a time when membership in such an organization was ground for expelling him from the country. He served as an organizer in various cities and finally became Secretary of the Greek Bureau of the Communist Party. He never voluntarily withdrew but was dropped from membership for reasons of party policy. He argues that his joining was permissible political activity because he was not found to have personally advocated overthrow of the Government by force. A sufficient answer is that there is nothing in the Constitution which imposes upon deportation officials the difficult and uncertain task of distinguishing between those members of a subversive group who individually advocate the forbidden course and those who do not. The interest to be preserved of those who do not personally advocate the illegal means is at most the privilege of

10. Tisi v. Tod, 264 U.S. 131, 133, 44 S. Ct. 260, 68 L.Ed. 590; U. S. ex rel. Vajtauer v. Comm'r of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560; Costanzo v. Tillinghast, 287 U.S. 341, 53 S.Ct. 152, 77 L.Ed. 350.

11. P.L. 831, 81st Cong., 2d Sess., C. 1024, Sept. 23, 1950, 8 U.S.C.A. § 137 et seq.

12. The Chinese Exclusion Case, (Chae Chan Ping v. U. S.), 130 U.S. 581, 9 S. Ct. 623, 32 L.Ed. 1068; Fong Yue Ting v. United States, 149 U.S. 698, 707, 13 S.Ct. 1016, 37 L.Ed. 905; The Japanese Immigration Case (Kaoru Yamataya v. Fisher), 189 U.S. 86, 100, 23 S.Ct. 611, 47 L.Ed. 721; Turner v. Williams, 194 U.S. 279, 289, 24 S.Ct. 719, 48 L.Ed. 979; Chuoco Tiaco v. Forbes, 228 U.S. 549, 556, 33 S.Ct. 585, 57 L.Ed. 960; U. S. ex rel. Vajtauer v. Comm'r of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560.

142

joining the group, and this is not of enough importance to outweigh the public interest in a workable rule which avoids the administrative difficulties of making a separation between those who do and those who do not favor the illegal objective of the group. Nor is it a valid objection that the ground of deportation is an act that occurred before the statute was adopted. See Mahler v. Eby, 264 U.S. 32, 39, 44 S.Ct. 283, 68 L.Ed. 549.

For the foregoing reasons we hold that the orders on appeal were correct. However, subsequent to their entry the Internal Security Act of 1950 was passed.[13] Section 23 thereof amends section 20 of the Immigration Act of February 5, 1917, 8 U.S.C.A. § 156, to provide that deportation "shall be directed by the Attorney General to the country specified by the alien, if it is willing to accept him into its territory", and that "No alien shall be deported under any provisions of this Act to any country in which the Attorney General shall find that such alien would be subjected to physical persecution." At the administrative hearing on October 15, 1946, the alien testified that he thought he would be persecuted if sent to Greece. In view of the foregoing amendments, before the appellant can be deported, the Attorney General must give him an opportunity to choose the country, and must find that he will not be subjected to physical persecution in the country to which he is to be sent. We have recently held that we must dispose of orders entered in habeas corpus proceedings according to the law as it exists when we decide the appeal.[14] Accordingly the proper disposition of the present appeal is the following: The order denying the relator's motions is affirmed; the order dismissing the writ is reversed and the cause remanded with directions to hold it in abeyance pending action by the Attorney General in conformity with this opinion.

13. P.L. 831, 81st Cong., 2d Sess., C. 1024, Sept. 23, 1950.

14. United States ex rel. Pizzuto v. Shaughnessy, 2 Cir., 184 F.2d 666;

United States ex rel. Wiczynski v. Shaughnessy, 2 Cir., 185 F.2d 347.