Diamond KIMM, Appellant,

v.

Richard C. HOY, District Director, Immigration and Naturalization Service, Appellee.

No. 15763.

United States Court of Appeals
Ninth Circuit.

Feb. 19, 1959.

Rehearing Denied March 30, 1959.

William M. Samuels, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Arline Martin, Richard A. Levine, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and HAMLIN, Circuit Judges.

BARNES, Circuit Judge.

Appellant sued below to enjoin officers of the Immigration and Naturalization Service in Los Angeles from deporting him to Korea. Review of a somewhat complicated chronology becomes necessary to fully understand the matter.

Appellant, a native of Korea, now fifty-seven years of age, was originally admitted to this country on July 6, 1928, as a non-quota immigrant student under the provisions of § 4(e) of the Immigration Act of 1924, 8 U.S.C. § 204(e) (1940 ed.).* He was readmitted to the United States in July 1935 after a few hours in Tijuana, Mexico, to resume his student status. Such leaving and re-entry was proper under General Order 94 issued on September 12, 1932. Other than that one time, appellant has remained continuously within the United States since his arrival in 1928.

In 1937 appellant planned to return to Korea, but the Korean-Japanese War made that unacceptable to appellant. In 1938 appellant sought and accepted full-time employment.

A warrant for appellant's arrest was issued December 13, 1941. It was served on March 14, 1942, the same day a hearing began on whether appellant was subject to deportation for overstaying his leave as a student. He was furnished with Forms I-55 and I-255 for future filing and was released on his own recognizance. On May 16, 1942, the hearing continued. Both forms previously given appellant were filed. Both forms requested "Permission to depart from the United States at my own expense in lieu of deportation." Thereafter, undated findings, conclusions and order of the presiding inspector were made, and served on the alien by registered mail on May 20, 1942. It was proposed that he be found subject to deportation, that he be permitted to depart voluntarily from the United States within sixty days, or within a longer period if transportation were found to be unavailable due to hostilities.

On October 27, 1942 the hearings were reopened to advise the alien "that the statements made by you in the Application for Permission to Depart from the United States Voluntarily (Form I-255), As in the General Information Form (Form I-55) which you have submitted, may be used against you." He was then served personally with the Proposed Findings, Conclusions and Order.[1]

On April 17, 1943 an order was made by the Acting Chairman of the Board of Immigration Appeals which stated:

* Now 8 U.S.C.A. § 1101(a) (15) (F).

1. Proposed Conclusions of Law:
"Upon the basis of the foregoing findings of fact, the undersigned proposes the following conclusions of law:
"(1) That under Sections 14 and 15 of the Immigration Act of 1924, the respondent is subject to deportation on the ground that he has remained in the United States after failing to maintain the exempt status of student under which he was admitted;
"(2) That under Section 20 of the Immigration Act of 1917, the respondent is deportable to Korea at the expense of the government."
Proposed Conclusions of Law Relating to Relief:
"(1) That under Section 20 of the Alien Registration Act of 1940, the respondent is entitled to have his plea for permission to depart voluntarily from the United States in lieu of deportation considered by the Attorney General, he having shown good moral character during the preceding five years."
Proposed Order:
"It is recommended that the alien be permitted to depart from the United States, or ship foreign one way, without expense to the Government, to any country of his choice, except contiguous territory, within sixty days, conditioned upon arrangements being made with the local immigration office for verification of departure, such departure to be considered a satisfactory compliance with the terms of the warrant.
It is further recommended that in the event that travel is impossible due to the present war, the sixty day period mentioned in the preceding paragraph commence at the cessation of hostilities or resumption of transportation facilities."
[Gov.Ex.D, pp. 1, 2.]

"Upon consideration of the entire record, the findings of fact and conclusions of law proposed by the Presiding Inspector and served on the alien October 27, 1942, are hereby adopted.

"Order: It is directed that an order of deportation be not entered at this time but that the alien be required to depart from the United States without expense to the Government to any country of his choice, within 90 days following the issuance to him of an exit permit, or within 90 days following the date on which exit permits cease to be required in such cases, whichever shall come sooner; conditioned upon arrangements being made with the local immigration office for verification of departure; the alien meanwhile to be required to remain in the United States."

At the hearing, hereinafter mentioned, of January 8, 1951, proof of service of this order on appellant was established. In the Immigration files there appeared a copy of a letter addressed to appellant dated April 28, 1943, which quoted the order precisely, and appellant's original letter, signed by him, dated May 2, 1943 acknowledging receipt of the letter quoting the order. Thus there was evidence before the hearing officer of service of the order on appellant.

There then follows without incident the period from April 28, 1943 to April 6, 1949.

The Chief Examiner of the Immigration and Naturalization Service, Department of Justice, had recommended, and the Assistant Commissioner had ordered, under date of April 6, 1949, that the hearing "be reopened so that the alien [might] apply for the benefits" provided for "in Section 19(c) of Immigration Act of 1917 (P.L. 863, July 1, 1948)."

On May 19, 1949 the District Director of Immigration wrote appellant, in part, as follows:

"It has been ordered that your deportation hearing be reopened for the purpose of permitting you to apply for the benefits of recently enacted legislation.

"Under such law, the Attorney General may suspend your deportation upon your making a proper showing:

"1. That you were residing in the United States on July 1, 1948;

"2. That you have resided continuously in this country for seven years or more, and

"3. That you have been a person of good moral character for the preceeding five years.

"Please fill in the enclosed forms carefully, but do not execute the jurat therein. Then, return the forms to this office (together with two photographs as per the attached description). When our investigation has been completed you will be notified to call for your reopened hearing. At that time you should be prepared to furnish proof of your seven years' residence mentioned above, preferably in the nature of documents bearing your name and indicating transactions or activities of yourself in this country."

On June 6, 1950 the District Director of Immigration wrote appellant, referring to the previous "hearing to show cause why you should not be deported under a warrant of arrest issued March 14, 1942. * * * In view of the decision of the Supreme Court in the [Wong Yang] Sung v. McGrath case,[2] it will be necessary to accord you a new hearing under that warrant."

At the June 16, 1950 hearing, appellant and his counsel were advised "that the purpose of this hearing is to determine the right of the respondent to be and remain in the United States and to enable him to show cause, if there be any, why he should not be deported from the United States in conformity with law."

2. 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L. Ed. 616, holding that administrative hearings in proceedings for the deportation of aliens must conform to the requirements of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq.

Plaintiff's counsel then asked for a continuance which was granted, but first both she and appellant were shown the order of the Assistant Commissioner, dated April 6, 1949, referred to above.

On October 2, 1950 the hearing was resumed. Appellant was present with his counsel who was shown (1) the transcribed record of the hearings of March 14th, May 16th, and October 27th, 1942; (2) the opinion of the Presiding Inspector; (3) the order of April 6, 1949; and (4) the record of the June 16, 1950 hearing.

After some questions and certain objections by counsel for appellant, the following colloquy took place:

"Q. Is your client applying for suspension of deportation? A. That's right Mr. Hearing Examiner.

"Q. As your client is applying for a relief within the discretion of the Attorney General the Examining Officer may inquire into any of his residence (sic) or any of his business (sic) while within the United States."

Appellant's counsel thereafter stated at this October 2nd, 1950 hearing:

"My understanding of this hearing and the purposes of it are to determine what the respondent has done, and whether he comes under the discretionary relief applied for * * *."

After several other questions about his activities, appellant was then asked: "Mr. Kimm, are you a member of the Communist Party?"

Mrs. Rosenberg, representing Kimm, objected to the question, citing various grounds. The record shows the appellant did not answer, on advice of counsel. The hearing was then continued and later placed off calendar.

On January 4, 1951 a hearing was set, appellant notified, and he appeared with new counsel. A continuance was granted appellant, to suit his counsel's convenience, to January 8, 1951. At that time appellant's counsel offered "to present on behalf of Mr. Kimm his formal application for suspension of deportation." Later the hearing officer referred to the hearing as being "open now for all purposes." There was no objection by appellant's counsel to this statement of the purpose of the hearing.

The attention of appellant's new counsel was specifically called on January 8, 1951 to appellant's refusal, when asked if he was a member of the Communist Party on October 2, 1950, to answer the question; and his refusal to answer the same question on January 8, 1951, on the ground of self-incrimination.

Under date of January 15, 1951, the hearing officer issued his decision. He found appellant deportable, and as to Discretionary Relief made Findings of Fact as follows:

"(1) That the respondent is a person of the Korean race;

"(2) That the respondent has failed to prove that he has been a person of good moral character for the past 5 years;

"(3) That the respondent has declined to answer questions as to whether he has been a member of a proscribed organization, on the ground of self incrimination;

"(4) That the respondent has resided in the United States continuously for 7 years or more and was residing in the United States on July 1, 1948;

"(5) That the respondent declines to answer questions on the ground of self incrimination which might establish that the respondent is deportable on grounds specified in Section 19(d) of the Immigration Act of 1917, as amended." [3]

3. Section 19(d), Immigration Act of 1917 (39 Stat. 889) as amended (54 Stat. 672 (1940)), reads as follows:
"(d) The provisions of subsection (c) shall not be applicable in the case of any alien who is deportable under (1) the Act of October 16, 1918 (40 Stat. 1008 (sic); U.S.C., title 8, sec. 137), entitled 'An Act to exclude and expel from the United States aliens who are members of

And Conclusions of Law:

"(1) That under Section 19(c)(1) of the Immigration Act of 1917, as amended,[4] the respondent has failed to establish a statutory eligibility for voluntary departure in lieu of deportation;

"(2) That under Section 19(c)(2) of the Immigration Act of 1917, as amended,[5] the respondent has failed to establish statutory eligibility for suspension of deportation."

The hearing officer recommended that the alien be deported on the charge stated in the warrant of arrest, and that the order of April 17, 1943, granting voluntary departure in lieu of deportation, be withdrawn.

On February 15, 1951 counsel for plaintiff filed exceptions to the decision, and the recommended order. On March 13, 1951 an order of deportation was made, following the hearing officer's recommendation. An appeal was taken to the Board of Immigration Appeals. In a four page opinion the appeal was dismissed on January 22, 1952. A motion for reconsideration, to reopen proceedings, and for a stay of deportation was filed with the Board of Immigration Appeals. This for the first time raised the question of possible physical persecution of appellant if deported to Korea. This motion was denied on April 28, 1952.

Appellant then filed his suit for review of the deportation order and for injunctive relief in the district court. 28 U.S. C. § 2201; 5 U.S.C.A. § 1009. The district court held against him, and he now appeals to this Court, which has jurisdiction. 28 U.S.C. § 1291.

Appellant lists seventeen points of alleged error. If we understand him correctly, he divides these in his argument into the following four categories:

(1) The introduction of Government Exhibit D was error.

(2) The 1950–51 hearings were erroneously limited to a determination of appellant's eligibility for relief from deportation only and could not pass upon his deportability; and the charges were so uncertain as to be basically unfair.

(3) Assuming a valid hearing, the determination of deportability was not supported by reasonable, substantial, nor probative evidence in that evidence that appellant failed to resume his studies after 1938 was necessary to reasonably

the anarchist and similar classes', as amended; (2) the Act of May 26, 1922, entitled 'An Act to amend the Act entitled "An Act to prohibit the importation and use of opium for other than medicinal purposes", approved February 9, 1909, as amended' (42 Stat. 596; U.S.C., title 21, sec. 175); (3) the Act of February 18, 1931, entitled 'An Act to provide for the deportation of aliens convicted and sentenced for violation of any law regulating traffic in narcotics', as amended (46 Stat. 1171; U.S.C., title 8 sec. 156a); (4) any of the provisions of so much of subsection (a) of this section as relates to criminals, prostitutes, procurers, or other immoral persons, the mentally and physically deficient, anarchists, and similar classes; or (5) subsection (b) of this section."

4. Section 19(c) (1), Immigration Act of 1917 (39 Stat. 889) as amended (62 Stat. 1206 (1948)) reads as follows:
    "(c) In the case of any alien (other than one to whom subsection (d) is applicable) who is deportable under any

law of the United States and who has proved good moral character for the preceding five years, the Attorney General may (1) permit such alien to depart the United States to any country of his choice at his own expense, in lieu of deportation; or * * *." Now 8 U. S.C.A. § 1254(a) (1).

5. Section 19(c) (2), Immigration Act of 1917 (39 Stat. 889) as amended (62 Stat. 1206 (1948)), reads in pertinent part:
    "(2) suspend deportation of such alien if he is not ineligible for naturalization or if ineligible, such ineligibility is solely by reason of his race, if he finds (a) that such deportation would result in serious economic detriment to a citizen or legally resident alien who is the spouse, parent, or minor child of such deportable alien; or (b) that such alien has resided continuously in the United States for seven years or more and is residing in the United States upon the effective date of this Act." Now 8 U.S. C.A. § 1254(a) (2).

justify a finding of permanent discontinuance of studies, and there was none.

(4) There was an improper exercise of discretion in failing to suspend deportation.

■ By a Supplemental Brief, appellant offers a fifth point: (5) That appellant's deportation to Korea should be enjoined as contrary to law.

Considering the last point first, this refers to appellant's claim that he would be subjected to physical persecution, were he returned to Korea. This issue was raised for the first time on appellant's "Motion for Reconsideration to Reopen Proceedings and for Stay of Deportation," filed March 22, 1952, and denied April 28, 1952 by the Board of Immigration Appeals.

It is only after deportability has been finally adjudicated that a determination is made as to which country a deportable alien is to be sent. 8 C.F.R. § 152.3(a) (1949 ed., 1951 Supp.).

It was conceded at the trial, and found by the district court, that no decision adverse to the appellant on the issue of physical persecution had been made as provided for by § 243(h) of the Immigration and Nationality Act of 1952, 8 U.S. C.A. § 1253(h) (1952 ed.). United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 1953, 206 F.2d 392; United States ex rel. Harisiades v. Shaughnessy, 2 Cir., 1951, 187 F.2d 137. The issue is thus prematurely raised, and we find no merit in appellant's fifth point.

■ Appellant's first point is that it was *agreed* that the 1950–51 record (Gov. Ex. A) was the record for review without reference to the 1942 record (Gov. Ex. D), but that despite this *agreement* the 1942 hearing record was received in evidence over appellant's objections.

It is obvious that there was, at least at one time, agreement between counsel on this issue, but the court below did not believe counsel were correct and did not join in any such "agreement." He admitted Government Exhibit D into evidence after suggesting:

"* * * that you put all the record in here and I will go through it. It may be that while some of this record is not applicable, I will go through the record and find out whether or not there is sufficient evidence to support the order."

It should be noted that the sole basis of appellant's deportability is that he entered as a student in 1928, pursued his studies until 1938, but since 1938 has continuously been gainfully employed.

It was unnecessary for the court to look outside of the evidence validly introduced in the 1950–51 hearings (Gov. Ex. A) to find support for the government's order of deportation. The 1950–51 hearings disclose that appellant testified, and photostated documents were introduced, many in his own handwriting, showing that he had worked continuously from September 1938 "to the time of the hearings." (See Exhibit 10 and Exhibits attached thereto.) In detail, such employment was as follows: September 1938 to July 1941, C. & K. Company (produce), position, Manager; August or September 1941 to January or February 1944, Berg Metals Company, position, Chemist; February 15, 1944 to December 30, 1944, Triplett & Barton, position, Chemist; January 1945 to September 1945, United States Government, O.S.S.; November 10, 1945 to June 10, 1948, Kaiser Steel Corp., position, foundry worker.

As an example, an application for employment to *Lockheed Aircraft Corporation*, signed by appellant on February 7, 1944, and apparently filled in very carefully by him, specified that he had been a student at the University of Southern California from September 1928 to June 1935; a student at Colorado School of Mines from September 1935 to August 1936; a graduate student at USC from September 1936 to August 1938; a manager of C. & K. Company, Whittier, produce suppliers, from September 1938 to July 1941; and an analytic chemist with Berg Metals Corp., Los Angeles, from July 1941 to January 1944.

Appellant testified that immediately after leaving Kaiser in June 1948, he be-

came self-employed in the printing business in Los Angeles, largely concerned with job-work and printing a paper, the "Korean Independence" of which he was the editor, with an average income of from $150 to $200 per month.

At the time of the 1950–51 hearings, appellant and his counsel were specifically advised that each of the exhibits attached to the transcript of those hearings and introduced into evidence "will be considered in arriving at a decision in this case." (For example, see p. 38, Hearing of January 8, 1951, referring to Ex. 10, the many records of employment.)

At no time during any of the hearings did the appellant deny or dispute the obvious fact that he had been a student at all times from 1928 to August 1938, and employed at various jobs practically continuously at all times after that date to the date of the 1950–51 hearings.

We do not know whether the court below read or considered any fact in Exhibit D. We assume, of course, that it did. We are certain, however, that whether it did or did not, there is ample, indeed, overwhelming evidence to establish appellant's deportability. In fact there is not the slightest hint of any evidence that he is not deportable.

Counsel urges that Kimm's constitutional right to a hearing embraces not only the right to present evidence, but a reasonable opportunity to know the claims of the opposite party and to meet them.

■ From the very first day the government approached Kimm, there was only one charge made against him—that he had come into this country as a student and "had remained in the United States after failing to maintain the exempt status of a student under which he was admitted." This he well understood, as the record discloses, from the first time he was contacted by the Immigration and Naturalization Service, to the last.

When he was examined on June 16, 1950, he was told the charge against him was that he had been found in the United States in violation of the Immigration laws thereof, to-wit:

"The Immigration Act of 1924, in that he has remained in the United States after failing to maintain the exempt status of student under which he was admitted.

"Do you understand the charge contained in the warrant? A. Yes.

"Q. This warrant is not shown to have been served however you are now furnished a copy of this warrant and it is served upon you. Are you the person named in this warrant of arrest? A. Yes."

Hearing Examiner To Respondent And Attorney Of Record:

"Q. You are advised that the purpose of this hearing is to determine the right of the respondent to be and remain in the United States and to enable him to show cause, if there by (sic) any, why he should not be deported from the United States in conformity with law. Do each of you understand? A. By Respondent: Yes.

"A. By Counsel: I do.

"By Hearing Examiner: Q. In this proceeding you have the right to offer evidence to meet any evidence presented or adduced by the Government, to cross-examine any witnesses and to make objections to be entered in the record. Do each of you understand?

"By Respondent: Yes.

"By Counsel: I do."

On October 2, 1950 he was presented with a transcript of record of the reopened hearing of June 16, 1950. His counsel acknowledged familiarity with that transcript.

On the record, we simply cannot agree with counsel for appellant that "appellant's deportability was neither involved, conceded, nor heard therein." It was specifically stated to be involved, it was, as a practical matter for all purposes of the hearing, conceded by the total failure on appellant's part to in any way contest

or dispute his deportability. Because it *was* so obvious, the issue was not emphasized. This cannot mean that the issue was not legally "heard." In any event, his deportability was conclusively established by reasonable, substantial, and probative evidence that appellant had totally failed to resume his studies after 1938, while remaining in this country.

This disposes of appellant's first three points. His fourth point is that if deportable, eligibility for suspension of deportation was established.

Suspension of deportation is, of course, a matter of grace. We are satisfied that the position taken by the government in its brief on this phase of the matter correctly sets forth the law and disposes of the point.

Section 19(c) of the Immigration Act of 1917 as amended in 1948 (62 Stat. 1206), as it existed before its repeal on June 27, 1952 (effective December 24, 1952) designated the Attorney General as the person authorized to exercise this matter of grace. He *could* do so (but was not *required* to do so), if the alien (a) had proved good moral character for the preceding five years, and (b) had resided in the United States for seven years; *provided* that (c) the alien was not one to whom subsection (d) of the Act was applicable.

Subsection (d) of the Act (54 Stat. 672), among other things, provided that subsection (c) should not be applicable to an alien deportable under the Act of October 16, 1918, 40 Stat. 1012, *i. e.*, a so-called "subversive alien." [6]

Appellant concededly meets the residence requirement, but was found failing in his proof of good moral character for the past five years when he declined to answer questions which might have made him statutorily deportable, depending upon the answers he gave.

Appellant, in the 1950–52 hearings, declined to answer any questions relating to whether he was then a member of the Communist Party or if he had ever been a member of the Communist Party. "Yes," answers to these questions would have established respondent's deportability under the Act of October 16, 1918, 40 Stat. 1012, and therefore pursuant to § 19(d) he would have been ineligible for relief of suspension of deportation under § 19(c), as well as for failure to carry his burden of establishing good moral character.

The hearing officer's decision, affirmed by the Board of Immigration Appeals, is therefore proper in holding appellant ineligible for suspension. The hearing officer's decision also finds appellant ineligible for suspension because he failed to affirmatively establish his good moral character, and points out in the body of the opinion that "In view of his failure to answer the questions propounded, the respondent has not affirmatively proved that he has been a person of good moral character for the past five years."

We do not find either the Konigsberg [7] or Schware [8] cases controlling. Here the verdict of the Immigration Service was not "guilty," but "unproven." The hearing officer's findings clearly show that appellant was found ineligible for discretionary suspension of deportation, because by his refusal to answer, appellant had failed to sustain his burden of affirmatively proving (a) his good moral character, and/or (b) that he was *not* statutorily ineligible.

This was no impossible burden, as claimed by appellant. It was a mere duty to answer pertinent questions. When appellant refused to supply the information required by the law under which he seeks an act of executive grace, he prevents the questioner from coming to any deter-

---

6. Now found in 8 U.S.C.A. § 1182(a) which makes ineligible in subdivision (28) "Aliens who are, or at any time have been * * * (C) * * * members of or affiliated with (i) the Communist Party of the United States. * * *."

7. Konigsberg v. State Bar of California, 1957, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed. 2d 810.

8. Schware v. Board of Bar Examiners, 1957, 353 U.S. 232, 77 S.Ct. 752, 1 L. Ed.2d 796.

mination that the United States statutes have been, or can be, complied with.

We reiterate what this Court recently said in Jimenez v. Barber,[9] at page 553–554:

"During the hearing on his application to suspend deportation, Jimenez declined to answer any questions concerning his past affiliations, memberships, and beliefs. It cannot be questioned that Jimenez was entitled to adopt this course, so that he could test the right of the hearing officer to propound such questions. As stated by this court in Jimenez v. Barber, 9 Cir., 226 F.2d 449, the constitutional questions which he thus chose to raise were substantial ones.

"In choosing this course, however, Jimenez was required to accept the hazards as well as the possible advantages which it afforded. Had his refusal to answer proper questions been in an ordinary civil action in which he was plaintiff, a trial court judgment would unquestionably have been entered against him. Were he successful in establishing, on appeal, that the questions were improper, this would gain him a new trial. But if unsuccessful, he would have no standing to demand reopening of the case on the strength of an offer to answer the question. Likewise, where a witness has brought down upon himself a conviction for contempt because of a mistaken belief that he could refuse to answer certain questions, he cannot escape the penalty by making an offer, long after the proceedings have ended, to answer the questions propounded.

"The case before us is much less favorable to Jimenez than the analogies which have been cited. Here, the refusal to answer questions was a proceeding in which the applicant sought nothing to which he was entitled as a matter of right. He asked only for an act of grace, dependent upon an official exercise of sound dis-

cretion. The hazards in adopting an obstructive attitude in such a proceeding must be at least as great as those involved in cases where established rights are sought to be enforced or protected."

Finding no error, the judgment of the district court is affirmed.